ROGER PEREZ *et al.*, Plaintiffs-Appellees, v. CINDY KUJAWA, Defendant-Appellee (Insurance Company of Illinois, Appellant).

First District (6th Division)   No. 1—91—4109

Opinion filed September 11, 1992.

James M. Dupree, of Chicago, for appellant.

Raymond P. Concannon, Ltd., of Chicago (Raymond P. Concannon, Michael P. Concannon, and Jeffrey M. Burkart, of counsel), for appellees.

JUSTICE McNAMARA delivered the opinion of the court:

A lienholder, Insurance Company of Illinois (ICI), appeals from an order of the circuit court of Cook County which reduced its medical payments subrogation lien by one-third under the "fund doctrine." This litigation arose out of a February 1987 car accident in which plaintiffs, Roger J. Perez and Peter P. Sannasardo, were allegedly injured by an automobile driven by defendant, Cindy Kujawa. Perez was a named insured under an automobile policy by ICI that provided medical payments coverage. Defendant was insured by State Farm Insurance Company.

Plaintiffs originally consulted with attorney Ron Strojny, and ICI's initial contacts regarding plaintiffs' claim were with Strojny. By certified letter dated March 10, 1987, ICI notified Strojny as follows:

"[ICI] will represent its own subrogation interests as to medical payments advanced or to be advanced to the insureds. This Company, therefore, neither solicits your services to represent it in this regard nor will it recognize any lien upon the subrogation amount claimed under the 'Fund Doctrine' for services gratuitously given."

The receipt indicates that Strojny's office received the letter on March 11, 1987.

On the same date, ICI informed defendant's carrier, State Farm, by certified mail of its subrogation claim, and its determination to collect, and that ICI represented itself and did not retain the services of an attorney representing its insured. The letter further stated:

"This Company expressly disavows any authority, apparent or otherwise, for such counsel to conduct negotiations on its behalf. Counsel representing the insured has similarly been advised of our position in this matter."

ICI at the same time informed both plaintiffs by letter that ICI had a subrogation lien regarding the medical payments.

On April 23, 1987, attorney Raymond P. Concannon, on plaintiffs' behalf, filed suit against Kujawa. By letter dated May 11, 1987, to ICI, Concannon requested payment of $2,353 on behalf of "our clients and your insureds" for benefits under the medical payments provision. The letter stated that Concannon "claim[ed] an attorneys' lien on these funds." On June 8, 1987, ICI sent Concannon a letter reiterating the position it had taken in its letter to Strojny. On July 25, 1987, Concannon filed plaintiffs' answers to interrogatories. On July 23, 1987, Concannon filed several discovery requests and responded to defendant's affirmative defense and production request.

In July 1987, plaintiffs received $2,353 ($1,303 to Perez and $1,050 to Sannasardo) pursuant to the medical payments provisions of the insurance policy. In January 1991, Perez and Sannasardo settled with Kujawa's insurer for $6,500 and $4,500, respectively. Subsequently, according to plaintiffs, Concannon offered ICI $869 and $700, respectively, representing two-thirds of the insurer's subrogation lien. ICI refused the offer, demanding 100% of the subrogation lien.

On October 29, 1990, plaintiffs, through Concannon, filed a petition to adjudicate ICI's subrogation lien by reducing the amount thereof by one-third. The trial court granted Concannon's petition and reduced ICI's lien from $2,353 to $1,569, relying upon *Baier v. State Farm Insurance Co.* (1977), 66 Ill. 2d 119, 361 N.E.2d 1100. ICI appeals from this order.

The sole issue on appeal is whether ICI, the medical payments subrogee, is entitled to 100% of its subrogation lien.

■ The trial court applied the "fund doctrine" and ruled in plaintiffs' favor. The "fund doctrine" is based on the equitable concept that an attorney who performs services in creating a fund should in equity and good conscience be allowed compensation out of the whole fund from those who seek to benefit from the creation of the fund. (*Baier v. State Farm Insurance Co.*, 66 Ill. 2d 119, 361 N.E.2d 1100.) In order to obtain a judgment for attorney fees for a subrogee under this doctrine, plaintiff must show that (1) the fund was created as a result of legal services performed by an attorney employed by him; (2) the subrogee did not participate in the creation of the fund; and (3) the subrogee benefited from the fund. (*Tenney v. American Family*

*Mutual Insurance Co.* (1984), 128 Ill. App. 3d 121, 470 N.E.2d 6; *Powell v. Inghram* (1983), 117 Ill. App. 3d 895, 453 N.E.2d 1163.) A plaintiff, however, may not recover attorney fees under the doctrine while rendering services for an unwilling recipient. *Tenney v. American Family*, 128 Ill. App. 3d 121, 470 N.E.2d 6.

Upon review, we conclude under these facts and circumstances that the equitable fund doctrine did not justify an award of attorney fees to plaintiffs out of the subrogation lien.

We find *Tenney* instructive. *Tenney* arose out of an automobile accident in which Barbara Spencer's vehicle struck Robin Moore's vehicle. Moore's insurer, American Family Mutual Insurance Company, advised her by letter dated October 29, 1981, of its subrogated lien to the extent of medical payments advanced, and its intention to deal directly with Spencer's insured on the subrogation claim. The carrier similarly informed Spencer and her insurer of its intention to collect. On February 25, 1982, Moore's insurer "expressly notified [Harold Tenney, Moore's attorney] that he was not to collect the subrogation claim." (*Tenney*, 128 Ill. App. 3d at 122, 470 N.E.2d at 7.) Nine months later, Tenney filed suit on Moore's behalf against Spencer, and the parties settled the claim shortly thereafter. Tenney then filed suit against American Family for legal fees and expenses incurred in recovering on the subrogation claim, and the trial court entered judgment in his favor. On appeal, this court held that the fund doctrine did not apply "[u]nder the circumstances" of the case. (*Tenney*, 128 Ill. App. 3d at 125, 470 N.E.2d at 9.) The court relied upon the fact that Tenney knew soon after he began representing Moore that the carrier did not want him to collect the subrogation claim and would not pay him if he did so. This court accordingly reversed the judgment which had been entered in favor of Tenney.

As in *Tenney*, ICI promptly and unequivocally informed Strojny, the attorney then representing plaintiffs, of its subrogation lien and disclaimed any intention to employ the insured's attorney for this purpose. Nevertheless, six weeks later, Concannon filed suit on plaintiffs' behalf. In our view, Strojny's referral of plaintiffs' case to Concannon after being so notified does not distinguish this case from *Tenney*. ICI initially dealt only with Strojny regarding plaintiffs' claim, and it did not learn about the referral until Concannon filed suit on April 23, 1987.

■ Plaintiffs urge that the fund doctrine controls this case because Concannon filed suit before ICI sent him a *"Tenney* letter" on June 8, 1987. We find this position to be without merit. ICI timely and sufficiently informed Strojny of its intention to represent its own

subrogation claim, and we believe that such notice was chargeable to Concannon. (See *Public Taxi Service, Inc. v. Ayrton* (1973), 15 Ill. App. 3d 706, 304 N.E.2d 733.) In our view, equity would not be served by allowing plaintiffs' employment of substitute counsel to subject ICI to attorney fees after ICI sufficiently notified Strojny and Kujawa's insurer of its intention to represent its own subrogation interests. Under Illinois law, ICI had the right to file suit on its own behalf for its subrogation claim (Ill. Rev. Stat. 1989, ch. 110, par. 2—403; *Tenney v. American Family*, 128 Ill. App. 3d 121, 470 N.E.2d 6), and we believe that ICI's efforts to preserve this right were sufficient under these facts. As in *Tenney*, it would be inequitable to apply the fund doctrine here.

Nor does *Powell v. Inghram*, upon which plaintiffs rely, require a different conclusion. In *Powell*, plaintiff signed a subrogation agreement with defendant insurance company, requiring her to pay the insurer for any recovery received by judgment or settlement. Plaintiff's attorney filed suit several months before any correspondence with the insurance company, seeking the total amount of damages arising from the tort. Ten months later, plaintiff submitted a claim to her insurance company for medical expenses. The insurer notified plaintiff's attorney of its subrogation lien, and disclaimed any intention of employing him to collect the lien. The insurer, however, requested the attorney to "protect [its] interests" in the event of a settlement. (*Powell*, 117 Ill. App. 3d at 896, 453 N.E.2d at 1164.) This court held that the insurance company's refusal to hire the plaintiff's attorney while seeking to benefit from his services was a "situation most suitable for the application of the fund doctrine." *Powell*, 117 Ill. App. 3d at 900, 453 N.E.2d at 1166.

*Powell* differs significantly from this case. Unlike *Powell*, where the insurer requested plaintiff's attorney to "protect" its interests, ICI here unequivocally advised plaintiffs and their attorneys, first Strojny and later Concannon, of its intention to pursue its own subrogation lien. ICI disclaimed any intention of employing plaintiffs' attorney and promptly advised Strojny and defendant's insurer. Moreover, unlike *Powell*, where the insurer informed plaintiff's attorney that he would not be retained as counsel 10 months after plaintiff filed suit, ICI promptly notified plaintiffs' attorney of its intention to pursue its own subrogation claim. *Powell* thus differs and does not support plaintiffs' position.

We do not interpret *Tenney* to preclude application of the fund doctrine whenever an insurer notifies its insured or an attorney representing its insured of its intention to pursue its own subrogation in-

terests. Nor do we so hold. Rather, under the circumstances of this case, as in *Tenney*, it would be inequitable to apply the fund doctrine.

Accordingly, we vacate that portion of the order of the circuit court of Cook County reducing ICI's subrogation lien from $2,353 to $1,569, and direct the circuit court to enter judgment in favor of ICI for $2,353.

Order vacated in part and cause remanded with directions.

EGAN, P.J., and RAKOWSKI, J., concur.