EMMA J. TAYLOR *et al.*, Plaintiffs-Appellees, v. AMERICAN FAMILY INSURANCE GROUP, Defendant-Appellant (State Farm Mutual Automobile Insurance Company, Defendant-Appellee).

Fifth District   No. 5—99—0048

Opinion filed March 3, 2000.

Larry H. Hellwig, of Law Offices of W. James Nabholz III, of St. Louis, Missouri, for appellant.

Rhonda D. Fiss, of Belleville, for appellees Emma J. Taylor, Billy Taylor, and Rhonda D. Fiss.

Robert D. Francis, of Dunham, Boman & Leskera, of Belleville, for appellee State Farm Mutual Automobile Insurance Company.

PRESIDING JUSTICE GOLDENHERSH delivered the opinion of the court:

This appeal arises out of a dispute between defendant American Family Insurance Group (American Family), as subrogee, and its insureds, Emma Taylor and Billy Taylor, and the Taylors' attorney, Rhonda D. Fiss, plaintiffs herein. The Taylors were insured by American Family. Emma Taylor was involved in an automobile accident, and defendant State Farm Mutual Automobile Insurance Company (State Farm) was the liability carrier of the vehicle driven by the tortfeasor, Danny Gibbs. The Taylors' policy with American Family included medical-payments coverage with a $10,000 limit per occurrence. American Family paid that amount to Emma Taylor. The Taylors retained attorney Rhonda Fiss to represent them in an action against Gibbs. Ultimately, Fiss reached a settlement agreement with State Farm for $55,000, of which $10,000 was paid by a separate check from State Farm made payable to Emma Taylor, Fiss, and American Family. American Family refused to pay Fiss a one-third portion of the $10,000, claiming that it pursued its subrogation claim separately through arbitration. Plaintiffs filed a petition for adjudication of attorney's lien, claiming that Fiss was entitled to one-third of the $10,000 under the fund doctrine. The trial court granted plaintiffs' petition and entered judgment in favor of plaintiffs and against American Family on count I, in the amount of $3,300 for attorney fees and $246 for costs, and in favor of State Farm and against plaintiffs on count II. On appeal, American Family contends that the trial court erred in entering judgment in favor of plaintiffs on count I by awarding Fiss at-

torney fees with regard to American Family's $10,000 medical-payments subrogation interests. No appeal was taken with regard to count II; however, State Farm filed a brief and participated in oral argument. We affirm.

## FACTS

Emma Taylor was involved in an automobile accident on January 5, 1994, at approximately 6:10 p.m., at the intersection of Route 157 and the Interstate 55/70 entrance ramp in Collinsville, with a vehicle driven by Danny Gibbs. Gibbs attempted to make a left turn in front of Emma Taylor in order to get onto the entrance ramp. Taylor retained Rhonda Fiss to represent her in a personal injury action against Gibbs.

The Taylors were insured by American Family, and the vehicle operated by Gibbs was insured through State Farm. The Taylors' insurance policy with American Family included, *inter alia*, medical-payments coverage with a $10,000 limit per occurrence. As a result of the accident with Gibbs, Taylor claimed benefits under the medical-payments portion of her policy and was paid the coverage limit of $10,000. The American Family policy also contained the following subrogation provision:

"5. Our Recovery Rights. If we pay under this policy, we are entitled to all the rights of recovery of the person to whom payment was made against another. That person must sign and deliver to us any legal papers relating to that recovery, do whatever else is necessary to help us exercise those rights[,] and do nothing after loss to harm our rights.

When we pay damages under this policy to a person who also collects from another, the amount collected from the other shall be repaid to us to the extent of our payment."

In a letter dated February 3, 1994, American Family advised Fiss that pursuant to *Tenney v. American Family Mutual Insurance Co.*, 128 Ill. App. 3d 121, 470 N.E.2d 6 (1984), it planned to "represent its own subrogation interests as to medical payments advanced or to be advanced to the insured." The letter further stated:

"This Company, therefore, neither solicits your services to represent it in this regard[,] nor will it recognize any lien upon the subrogation amount claimed under the 'Fund Doctrine' for services gratuitously given.

Please be informed that we are also advising the tortfeasor's carrier, pursuant to the Tenney Case, to issue a separate draft representing this Company's subrogation interest only and naming the Company as sole payee as subrogee of the insured as per the rights accorded under the insured's contract of insurance. This

separate draft will most likely be coming from the amount of the settlement between our insured and State Farm Insurance."

An identical letter was sent to Fiss by American Family on April 22, 1994. On that same date, American Family sent State Farm a letter in which it advised State Farm that it would be representing its own subrogation interests in the matter. The letter also explained that Fiss did not have the authority to represent American Family in the matter and that Fiss had been so advised.

On June 29, 1994, American Family sent letters to Fiss and State Farm notifying both that the $10,000 medical-expense limit of the policy had been reached and that American Family was seeking 100% reimbursement. On July 6, 1994, Fiss filed a lawsuit against Gibbs. On August 11, 1994, American Family sent Fiss another letter in which it requested a copy of any lawsuit filed by her on behalf of Emma Taylor. Fiss did not reply to the letter.

On November 17,. 1995, American Family filed a petition for the arbitration of its subrogation claim with an arbitration forum. On November 20, 1995, Larry Hellwig, outside counsel for American Family, sent Fiss a letter explaining that American Family elected to pursue its $10,000 medical-pay subrogation interests through arbitration because both American Family and State Farm are members of the Conference of Casualty Insurance Companies, Inc., arbitration forum (CCIC). State Farm did not receive the arbitration petition until December 11, 1995. After receiving the petition, State Farm notified CCIC that it was not contesting liability, but it requested that the arbitration matter be deferred because of pending litigation.

Attorney Hellwig sent Fiss another letter, dated December 14, 1995, in which he again advised Fiss that American Family retained him to represent its medical-pay subrogation interest and that the matter was being handled through arbitration. The letter reiterated that American Family's medical-payment interest should not be included in the personal injury lawsuit. On January 24, 1996, the CCIC notified State Farm that its request for a deferment was denied and that the matter was set for hearing in January 1997.

The personal injury lawsuit commenced in the circuit court of Madison County on June 10, 1996. On the third day of trial, the suit was settled for $55,000, which included the $10,000 medical payments advanced to Emma Taylor by American Family as per the contract of insurance. State Farm was aware of the medical-payment issue and, therefore, issued separate checks. On June 18, 1996, Ms. Fiss sent Mr. Hellwig a letter in which she explained that she was holding a check for $10,000 made payable to American Family, Emma Taylor, and Fiss, for reimbursement of medical-expense payments made by American

Family. Fiss requested one-third of the $10,000 for legal fees. State Farm also notified American Family of the settlement and the check that had been issued.

Hellwig replied to Fiss via a letter dated June 25, 1996, in which he expressed confusion as to why Fiss would receive a check since the matter was currently pending in arbitration. He suggested that Fiss return the check to State Farm because American Family intended to wait for the arbitrator's decision. Fiss sent Hellwig another letter on July 3, 1996, in which she explained that she included American Family's interest in the settlement of the personal injury case because American Family failed to release its subrogation lien on Emma Taylor's file with State Farm. She stated that she intended to file suit to adjudicate the lien if the matter could not be resolved.

In January 1997, the medical-payment matter proceeded to arbitration. The CCIC awarded American Family its full claim of $10,000. On January 23, 1997, plaintiffs herein filed a petition to adjudicate lien against American Family in the circuit court of St. Clair County. On May 20, 1997, an amended petition was filed, which added State Farm as a party. On December 30, 1998, the trial court entered judgment in favor of plaintiffs and against American Family in the amount of $3,300 plus court costs on count I and in favor of State Farm and against plaintiffs on count II. American Family now appeals.

## ANALYSIS

■ The fund doctrine is one of equity and provides that an attorney who performs services in creating a fund should in good conscience be entitled to compensation out of the whole fund from those who seek to benefit from the creation of the fund. See *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478, 62 L. Ed. 2d 676, 681, 100 S. Ct. 745, 749 (1980); *Baier v. State Farm Insurance Co.*, 66 Ill. 2d 119, 361 N.E.2d 1100 (1977). The rationale behind the fund doctrine is that if the costs of litigation are not spread among the beneficiaries of the fund, some beneficiaries are unjustly enriched by the attorney's efforts. See *Country Mutual Insurance Co. v. Birner*, 293 Ill. App. 3d 452, 456, 688 N.E.2d 859, 862 (1997). To be entitled to fees under the fund doctrine, the attorney must show: (1) that the fund was created as the result of legal services performed by the attorney, (2) that the subrogee did not participate in the creation of the fund, and (3) that the subrogee benefitted out of the fund that was created. See *McGee v. Oldham*, 267 Ill. App. 3d 396, 399, 642 N.E.2d 196, 198 (1994).

American Family, citing *Tenney v. American Family Mutual Insurance Co.*, 128 Ill. App. 3d 121, 470 N.E.2d 6 (1984), contends, however,

that because it notified Fiss one month after the accident and on four other occasions that it intended to represent its own subrogation interests, it was an unwilling recipient of plaintiff's attorney's services and that equity does not justify an award of attorney fees to Fiss under these conditions. American Family also points to its arbitration claim with CCIC to support its contention that it was an unwilling recipient of Fiss' services. We are unconvinced by American Family's arguments.

■ While *Tenney* stands for the proposition that a plaintiff's attorney may not recover attorney fees under the fund doctrine for rendering his or her services to an unwilling recipient, *Tenney* is not to be interpreted "to preclude application of the fund doctrine whenever an insurer notifies its insured or an attorney representing its insured of its intention to pursue its own subrogation interests." *Perez v. Kujawa*, 234 Ill. App. 3d 957, 961-62, 602 N.E.2d 38, 41 (1992). In fact, merely writing to the plaintiff's attorney and expressing a desire to represent one's own interest, without more, is not enough to overcome the fund doctrine. See *McGee*, 267 Ill. App. 3d at 401, 642 N.E.2d at 199; see also *Perez*, 234 Ill. App. 3d at 961-62, 602 N.E.2d at 41. As we stated in *McGee*, in order for the subrogee to overcome the fund doctrine, it is necessary "for the subrogee to show some participation in the creation of the fund reflecting more than a desire to protect its subrogation rights." *McGee*, 267 Ill. App. 3d at 401, 642 N.E.2d at 199.

■ In the instant case, American Family sent a letter to Fiss dated February 3, 1994, advising Fiss that pursuant to *Tenney*, it planned to represent its own subrogation interests with respect to the medical payments advanced to Emma Taylor and would not recognize any lien upon the $10,000 subrogation amount claimed under the fund doctrine. However, the letter went on to advise Fiss that American Family was going to ask State Farm to issue a separate check for its subrogation claim, with only American Family listed as payee. American Family opined that the "separate draft will most likely be coming from the amount of the settlement between the insured and State Farm Insurance." This letter actually advises Fiss that American Family expected her to negotiate a settlement on behalf of Emma Taylor, including American Family's subrogation interests, but that American Family was not going to pay Fiss any attorney fees for her services. Accordingly, even though American Family was prompt, it did not unequivocally disclaim its intention to use Fiss to negotiate a settlement with State Farm on its behalf. *Contra Perez*, 234 Ill. App. 3d at 960, 602 N.E.2d at 40.

American Family sent additional letters to both State Farm and

Fiss, reporting that American Family planned to represent its own interests with regard to its medical-payments subrogation interests, but American Family failed to take any action until November 17, 1995, almost two years after the accident, when it finally filed an arbitration petition with CCIC. Fiss was notified by outside counsel for American Family that an arbitration petition had been filed; however, the arbitration matter was not docketed immediately. In the interim, the suit filed by Fiss on behalf of Taylor went to trial in Madison County on June 10, 1996. A settlement was reached between Fiss and State Farm on the third day of trial for $55,000, which included the $10,000 of medical payments advanced by American Family to Emma Taylor. Because of the attorney's lien and the subrogation lien on Taylor's file, State Farm logically and quite sensibly issued two separate checks, one for $45,000 made payable only to Fiss and Taylor, and one for $10,000 made payable to Fiss, Taylor, and American Family. An arbitration award was not made until January 1997.

Fiss and State Farm cite to *Country Mutual Insurance Co. v. Birner*, 293 Ill. App. 3d 452, 688 N.E.2d 859 (1997), in support of their contention that American Family's actions failed to rise to the level of participation or intervention necessary to overcome the fund doctrine. *Birner* is factually similar to the instant case. In that case, attorney Donald Birner filed a personal injury lawsuit on behalf of his client, Teresa Perrine, who was insured by Country Mutual Insurance Company (Country Mutual). Birner ultimately settled the case with the tortfeasor's insurance carrier, American Family. The settlement included payment of $4,400.80 for Perrine's medical bills, which had been paid by Country Mutual as per her contract of insurance. Country Mutual, as subrogee, refused to pay Birner for his services. Consequently, Birner filed a small claims action seeking one-third of the $4,400.80. Country Mutual responded by filing a declaratory judgment action against Birner and American Family. Country Mutual also obtained a default arbitration award against American Family and requested that the trial court confirm the arbitration award. The arbitration petition had not been filed with CCIC until almost two years after the accident, long after Perrine had retained Birner. Birner's lawsuit and Country Mutual's lawsuit were consolidated. Like the instant case, the circuit court in *Birner* found in favor of the attorney and against the subrogee insurance company. Our colleagues in the third district affirmed, stating:

"The *Tenney* line of cases are [*sic*] inapplicable here. Country Mutual's words and actions were neither prompt nor unequivocal. Although Country Mutual was aware of the accident, medical bills[,] and its own subrogation claim in April 1994, the company

did not file a lawsuit or commence arbitration proceedings until November 1995, after the Perrines had retained Birner. In the interim, Country Mutual sent correspondence to American Family that stated, '[I]f settlement is made with [Teresa Perrine], please forward our amount for the above subrogation material.' \*\*\*

\*\*\* The record before us shows that settlement was reached without meaningful participation by Country Mutual. Although Country Mutual had filed its arbitration claim, nothing in the record indicates that this contributed to reaching the settlement." *Birner*, 293 Ill. App. 3d at 457, 688 N.E2d at 863.

Likewise, the subrogee in the instant case filed an arbitration petition, but nothing in the record indicates that this contributed in any meaningful way to reaching the settlement.

Meaningful participation in the creation of a fund is not a meaningless requirement. It may involve the subrogee's filing a timely petition to intervene in the underlying personal injury action. In whatever form, it must include some real and substantial action in creating the fund from which the subrogee wishes to recover. One must keep in mind, however, that an underlying action is that of the subrogee's insured, and accordingly, the insurer owes a duty not to take action adverse to its insured's interests. Lawyers are among the most resourceful and innovative members of society; reaching a procedure that protects both the insurer's and insured's interests should not be insurmountable if approached in good faith.

We agree with the trial court that American Family did not participate in the creation of the settlement fund and that Fiss is entitled to one-third of the $10,000 check issued by State Farm in settlement of the underlying cause of action. State Farm could not simply ignore the attorney's lien. Accordingly, the judgment of the circuit court of St. Clair County is hereby affirmed.

Affirmed.

MAAG and HOPKINS, JJ., concur.