No. 2--04--0924

_________________________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_________________________________________________________________________________

JEANETTE E. RITTER and ROBERT D. ) Appeal from the Circuit Court

RITTER, ) of Winnebago County.

)

Plaintiffs-Appellants, )

) 

v. ) No. 03--L--424

)

HENRY L. HACHMEISTER, as Executor )

of the Estate of Nancy L. Hachmeister, and )

HACK'S AUCTION AND REALTY )

SERVICE, INC., )

) 

)

Defendants )

)

(Midwest Security Administrators, Inc., and ) Honorable

Group Insurance Plan of Eclipse, Inc., ) Ronald L. Pirrello,

Intervenors-Appellees). ) Judge, Presiding.

_________________________________________________________________________________

JUSTICE CALLUM delivered the opinion of the court:

Plaintiffs, Jeanette E. Ritter and Robert D. Ritter, filed a lawsuit in the circuit court of Winnebago County against defendants, Henry L. Hachmeister, as executor of the estate of Nancy L. Hachmeister, and Hack's Auction and Realty Service, Inc., seeking recovery in connection with a motor vehicle accident that occurred on September 3, 2003.  Jeanette sought recovery for personal injuries suffered in the accident, and Robert sought recovery for loss of consortium.  The parties settled the lawsuit.  Plaintiffs subsequently filed a petition to adjudicate the liens of Jeanette's health insurance plan, the Group Insurance Plan of Eclipse, Inc., and the plan's third-party administrator, Midwest Security Administrators, Inc. (collectively, the Plan), for benefits paid in connection with the accident.  Plaintiffs sought entry of an order that, under the so-called "common fund doctrine," the Plan was responsible for a portion of plaintiffs' attorney fees, and its share of the settlement proceeds should be reduced accordingly.  However, the trial court ordered the Plan to be reimbursed for the full amount of benefits it paid, with no reduction for attorney fees.  Plaintiffs appeal from that order.  We affirm.

The record on appeal establishes the following facts.  Three weeks after the accident, the Plan sent a letter to plaintiffs' attorney, advising him that the Plan's group health contract "includes the right of subrogation/reimbursement" and that, upon settlement of the claim against defendants, plaintiff should "issue a separate draft made out to [the Plan]."  The letter also stated:

"This letter is to inform you that [the Plan] does not agree to be represented by your office at this time and objects to the payment of any attorney fees based on the Common Fund Doctrine.  The insured has a contractual duty to work with [the Plan] to secure a settlement and can do nothing to prejudice our rights to recover.  However, [the Plan] would like to cooperate with your office to secure a settlement, which is acceptable to all concerned."

On the same date, the Plan also sent a letter to defendants' insurer, asserting its right to be reimbursed from the proceeds of any settlement for benefits paid in connection with Jeanette's injuries.  The letter also advised defendants' insurer that plaintiffs and their attorney had no authority to settle the Plan's claims and that the Plan "[would] not pay fees or costs associated with any claim or lawsuit without express written authorization."

Plaintiffs filed their lawsuit on November 7, 2003.  On February 5, 2004, the Plan moved to intervene in the lawsuit and to file a complaint as Jeanette's subrogee.  At that time, the Plan sent a letter to plaintiffs' and defendants' attorneys, advising them that it had retained counsel to represent its subrogation interests.  The letter also advised plaintiffs' and defendants' attorneys that their settlement discussions should not address medical payments advanced by the Plan.  Plaintiffs objected to the motion to intervene, arguing, 
inter alia
, that introducing issues pertaining to insurance benefits and coordinating the participation of an additional party would prejudice plaintiffs' interests.  The trial court granted the Plan's motion to intervene, but the court's order provided that the Plan could not participate in trial, could not participate in depositions without leave of court, and could not raise new issues or add new parties to the suit.  The Plan moved for reconsideration of the limitations on its intervention.  Alternatively, the Plan moved to voluntarily dismiss its complaint so that it could refile the complaint as a separate action.  The trial court denied the motion to reconsider and granted the motion for voluntary dismissal.

In its capacity as Jeanette's subrogee, the Plan subsequently filed a separate lawsuit against defendants to recover the benefits it had paid.  During the pendency of the Plan's suit, plaintiffs and defendants reached a settlement, and plaintiffs filed their petition to adjudicate liens.  As noted, plaintiffs contended that in disbursing the settlement proceeds, the Plan's subrogation claim should be reduced by an amount representing its fair share of plaintiffs' attorney fees incurred in achieving the settlement.  The Plan objected that, because it had never agreed to permit plaintiffs' attorney to represent its interests, it could not be compelled to contribute to plaintiffs' attorney fees.  The Plan argued that it had attempted to participate in the litigation to represent its own interests as subrogee.  During the pendency of the petition to adjudicate liens, the trial court dismissed defendants pursuant to the settlement.  As noted, the trial court awarded the Plan full reimbursement of the benefits it had paid, with no reduction for plaintiffs' attorney fees.  Plaintiffs filed a timely notice of appeal.

Plaintiffs argue that, under the common fund doctrine, the Plan should have been required to pay them attorney fees for their attorney's efforts in securing the settlement.  The common fund doctrine's underlying theory and the principles governing its application have been cogently described as follows:

"The common fund doctrine allows an attorney 'who creates, preserves, or increases the value of a fund in which others have an ownership interest to be reimbursed from that fund for litigation expenses incurred, including counsel fees.' [Citation.]  The doctrine 'rests upon the perception that persons who obtain the benefit of a lawsuit without contributing to its costs are unjustly enriched.' [Citation.]  The basis for the court's authority to award fees under this doctrine is the power to do equity in a particular situation. [Citation.] 'To sustain a claim under the common fund doctrine, the attorney must show that (1) the fund was created as the result of legal services performed by the attorney, (2) the subrogee or claimant did not participate in the creation of the fund, and (3) the subrogee or claimant benefited or will benefit from the fund that was created.'  [Citation.]  Whether the common fund doctrine applies to any particular case is a question of law which we review 
de novo
."  
Linker v. Allstate Insurance Co.
, 342 Ill. App. 3d 764, 770-71 (2003).

The present case involves the applicability of the doctrine in the familiar scenario where an insurer has paid its own insured compensation for injuries for which another party is liable.  Insurance policies typically include provisions under which the insurer is subrogated to the insured's rights against the liable party.  Subrogation "[i]s a method whereby one who has involuntarily paid a debt or claim of another succeeds to the rights of the other with respect to the claim or debt so paid."  
Dix Mutual Insurance Co. v. LaFramboise
, 149 Ill. 2d 314, 319 (1992).  When the injured party retains an attorney who recovers a judgment against the liable party, the question arises whether an insurer claiming some right to part of the judgment must pay a share of the injured party's attorney fees.  In 
Tenney v. American Family Mutual Insurance Co.
, 128 Ill. App. 3d 121, 124 (1984), it was held that a plaintiff may not recover attorney fees under the common fund doctrine for legal services that were knowingly provided to an unwilling recipient.  Consequently, in 
Perez v. Kujawa
, 234 Ill. App. 3d 957, 960 (1992), the insured was denied attorney fees under the common fund doctrine where the insurer "promptly and unequivocally" informed the insured's attorney that it did not desire the attorney's services in connection with its subrogation rights.

More recent cases establish, however, that a mere token protest against application of the doctrine is insufficient.  Generally speaking, "[w]hat is necessary is for the subrogee to show some participation in the creation of the fund reflecting more than a desire to protect its subrogation rights."  
McGee v. Oldham
, 267 Ill. App. 3d 396, 401 (1994); see also 
Taylor v. American Family Insurance Group
, 311 Ill. App. 3d 1034, 1039 (2000); 
Country Mutual Insurance Co. v. Birner
, 293 Ill. App. 3d 452, 457 (1997).  In order to protect its rights, an insurer-subrogee may "join[] as a plaintiff or file[] an interpleader counterclaim and participate[] in the settlement negotiations."  
Meyers v. Hablutzel
, 236 Ill. App. 3d 705, 709 (1992).

In addition, the common fund doctrine will apply if the insurer's notification that it intends to pursue its own subrogation rights is not prompt.  See 
Birner
, 293 Ill. App. 3d at 457 (insurer-subrogee held liable under the common fund doctrine where it did not take any action on its subrogation claim for more than a year and a half after it was aware of the claim and after the insured had filed its lawsuit); 
McGee
, 267 Ill. App.3d at 400 (insurer-subrogee's notice that it intended to represent its own subrogation interests came too late when it was given over a year after its insured had filed a lawsuit against the liable party); 
Meyers
, 236 Ill. App. 3d at 707-08 (insurer-subrogee liable under the common fund doctrine where it was only after the insured filed suit that the insurer-subrogee gave notice that the insured's attorney's services were not desired).  The doctrine will also apply if notification is equivocal in that the insurer requests payment from the plaintiff upon settlement of its claim against the defendant.  See 
Taylor
, 311 Ill. App. 3d at 1039; 
Birner
, 293 Ill. App. 3d at 457.

In the case at bar, the Plan gave prompt notice that it did not desire plaintiffs' counsel's services and that it intended to act on its own behalf in pursuit of its subrogation rights.  The initial letter to plaintiffs' attorney, which was sent three weeks after the accident, was somewhat equivocal; it requested plaintiffs to issue a draft upon settlement, suggesting that the Plan expected to reap the benefits of plaintiffs' attorney's work on the case.  However, the Plan clarified its position when it sought to intervene in the lawsuit.  At that time, the Plan notified plaintiffs' and defendants' attorneys that any settlement discussions should exclude medical benefits advanced by the Plan.  The major point of contention in this appeal is whether the Plan's participation in the creation of the settlement fund was sufficient to permit it to avoid paying fees to plaintiffs' attorney under the common fund doctrine.  Plaintiffs insist that the settlement was solely the result of their attorney's efforts and that, because the Plan benefitted from those efforts, it should share in the payment of plaintiffs' attorney fees.

The requirement of participation recited in
 
Taylor
, 
Birner
, and 
McGee
 ensures that the subrogee acts in good faith to represent its own interests.  Here, the record is clear that the Plan made a 
bona fide
 effort to participate in the litigation.  However, plaintiffs vigorously opposed that effort, and were largely successful in that opposition, securing an order that foreclosed any meaningful participation by the Plan in the litigation.  These circumstances distinguish this case from 
Taylor
, 
Birner
, and 
McGee
. 
 Plaintiffs' opposition to the Plan's intervention led the Plan to withdraw from the action and to pursue its subrogation rights independently in a separate lawsuit.  This case is not one where the subrogee's professed desire to act on its own behalf was a mere pretense.  Under these circumstances, the Plan's attempt to participate in the litigation satisfies the requirements of 
Taylor
, 
Birner
, and 
McGee
.  The Plan has shown itself to be a genuinely "unwilling recipient" of the services of plaintiffs' attorney.  Thus the trial court did not err in concluding that the Plan should not have to pay for those services.

For the foregoing reasons, the judgment of the circuit court of Winnebago County is affirmed.

Affirmed.

BOWMAN and KAPALA, JJ., concur.