# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *Wajnberg v. Wunglueck*, 2011 IL App (2d) 110190

---

| | |
|---|---|
| Appellate Court Caption | AL WAJNBERG, Plaintiff and Movant-Appellee, v. DAYNA L. WUNGLUECK, Defendant-Appellee (Erie Insurance Company, Respondent-Appellant). |
| District & No. | Second District<br>Docket No. 2-11-0190 |
| Filed | December 29, 2011 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action arising from an automobile accident where plaintiff's insurer paid plaintiff's medical expenses and then sought reimbursement from defendant's insurer through intercompany arbitration while plaintiff filed an action against defendant, settled for an amount including the medical payments made by plaintiff's insurer, and then moved to adjudicate the insurer's lien, the trial court properly granted plaintiff's motion and, pursuant to the common fund doctrine, reduced the insurer's lien by one-third, since plaintiff's insurer never gave plaintiff, his attorneys or defendant's insurer notice that it intended to collect its subrogation claim on its own, that it did not want the assistance of plaintiff's counsel, and that its claim should not be included in any settlement. |
| Decision Under Review | Appeal from the Circuit Court of Kane County, No. 09-L-614; the Hon. Robert B. Spence, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

James P. Newman and Brianne M. Connell, both of James P. Newman &
Associates, LLC, of St. Charles, for appellant.

Patrick D. Flanagan, of Brittain & Ketcham, P.C., of Elgin, for appellee
Al Wajnberg.

Edward M. Quimet, of Abramson, Murtaugh & Coghlan, of Aurora, for
appellee Dayna L. Wunglueck.

Panel

PRESIDING JUSTICE JORGENSEN delivered the judgment of the
court, with opinion.
Justices Bowman and Zenoff concurred in the judgment and opinion.

## OPINION

¶ 1  Following an automobile accident in which plaintiff, Al Wajnberg, was injured by defendant, Dayna L. Wunglueck, respondent, Erie Insurance Company, plaintiff's insurer, paid plaintiff's medical expenses and then sought through arbitration reimbursement from defendant's insurer, Farmers Insurance Company. Plaintiff filed a personal injury suit against defendant, and the parties settled for an amount that included Erie's medical payments subrogation claim. Plaintiff moved to adjudicate Erie's lien, and the trial court, pursuant to the common fund doctrine, granted the motion, reducing the lien by one-third. Erie appeals, arguing that the trial court erred in applying the common fund doctrine; that Erie never asserted a lien against plaintiff's recovery; and that, even if it asserted a lien, the trial court lacked both subject matter jurisdiction over the subrogation claim (because it is pending in arbitration) and personal jurisdiction over Erie (because Erie was not a party to the trial court action, it asserted its claim in an arbitration forum, and it was not provided due notice of plaintiff's claim for relief). For the following reasons, we affirm.

¶ 2             I. BACKGROUND

¶ 3  On October 3, 2007, in Gilberts, plaintiff was injured in a motor vehicle accident with defendant (the at-fault driver). In April or May 2009, Erie made its final payment for medical services on plaintiff's behalf. Specifically, Erie paid $10,000 of plaintiff's $13,084.50 total medical expenses. On April 13, 2009, Erie sent a letter to Farmers, stating:

   "Our investigation has revealed that your insured[, *i.e.*, defendant,] is responsible for the medical expenses resulting from the above accident.

   We are enclosing the proof necessary to support our subrogation claim. Please send

your check in the amount of $10,000.00.

*Please protect the interest of Erie Insurance at the time of settlement with our insured*[, *i.e.*, plaintiff].” (Emphasis added.)

¶ 4    On June 5, 2009, Erie filed with Arbitration Forums, Inc., a claim for damages against Farmers. As noted on its claim form, Erie filed its claim to satisfy the statute of limitations and preserve its right to medical payments reimbursement from Farmers. Arbitration Forums, of which both Erie and Farmers are members, permits its members to adjudicate disputes without having to pay attorney fees. It also requires that all subrogation disputes between members be adjudicated in the arbitration forum. Erie submitted proofs necessary for adjudication of its claim.

¶ 5    On October 2, 2009 (four months after Erie filed its claim with Arbitration Forums), plaintiff filed in Kane County a complaint against defendant, alleging that defendant's negligent driving caused the October 3, 2007, motor vehicle accident in which plaintiff was injured.

¶ 6    Farmers subsequently filed its response to Erie's arbitration claim, seeking a deferment because plaintiff's lawsuit had been filed and was pending. On February 17, 2010, Erie sent a letter to (only) Arbitration Forums challenging Farmers' deferment request. It claimed that it did not receive a copy of the deferment request and that it was *unaware* if a lawsuit had ever been filed by any of the parties. Further, Erie claimed that, if a lawsuit had been filed, its claim was protected under the arbitration agreement. Erie stated: “We would request the attorney not include our recovery in his suit and request that [Farmers] pay us directly for our medical payments which were for treatment and paid policy limits.” On February 25, 2010, Farmers sent to Erie a copy of its deferment request, along with its acknowledgment that it would protect Erie's medical payments subrogation rights at the time of settlement.

¶ 7    On April 3, 2010, Arbitration Forums granted Farmers' request for a deferment and scheduled a hearing for June 14, 2011. In the letter, Arbitration Forums stated that the matter was being “deferred for one year due to companion claims and/or suits pending.” (The hearing has again been deferred pending the outcome of this appeal.)

¶ 8    Plaintiff and defendant subsequently entered into settlement negotiations. During negotiations, plaintiff's attorneys became aware of Erie's request to Farmers to protect Erie's interest at the time of settlement (Farmers provided plaintiff's attorneys with a copy of Erie's April 13, 2009, letter). Plaintiff and defendant subsequently settled their dispute for $40,000 (which they understood as including Erie's medical payments subrogation claim), and, on September 29, 2010, the trial court entered a stipulation and order to dismiss the suit in light of settlement, but it retained jurisdiction to enforce the settlement and to adjudicate any liens.

¶ 9    On October 5, 2010, plaintiff moved to adjudicate Erie's lien, requesting that the court adjudicate the lien to zero or, alternatively, reduce it by one-third pursuant to the common fund doctrine. Plaintiff alleged that the parties settled the matter arising out of the vehicle accident for $40,000 and that Erie claimed a $10,000 lien against the suit's proceeds (as evidence of the lien, plaintiff attached a copy of Erie's April 13, 2009, letter to Farmers in which Erie requested $10,000 and asked Farmers to protect its interest at settlement). Plaintiff further alleged that the settlement created a common fund and that Erie's only

participation in the matter was sending a lien letter to Farmers. Plaintiff argued that Erie will benefit from the common fund, which was created by the settlement achieved by his attorneys, and he demanded proof of the lien claims. In an affidavit attached to plaintiff's motion, plaintiff's attorney Patrick Flanagan stated that he never received any written correspondence from Erie relating to this case; that attorneys at his firm became aware of Erie's lien "when they inquired during settlement negotiations with [Farmers]"; that Erie did not participate in any aspect of the case (including the pleading and discovery phases and the settlement negotiations); and that Erie "will benefit from this fund[, *i.e.*, the $40,000 settlement,] by receiving a portion of the amount [it] paid under [its] Med Pay provisions."

¶ 10    On October 12, 2010, the trial court granted plaintiff's motion and adjudicated the $10,000 lien to zero dollars. (Erie did not appear in court.)

¶ 11    On October 21, 2010, Erie filed an emergency motion to vacate the court's order and responded to plaintiff's motion to adjudicate the lien, arguing that the trial court had no jurisdiction over Erie (as it was not a party to the action; had asserted its claims in another forum; and was not provided notice of plaintiff's claim for relief) and that Erie had never asserted any lien against plaintiff's recovery (because it filed its own independent claim against Farmers with Arbitration Forums). Erie further alleged that both it and Farmers are signatories of an intercompany arbitration agreement that requires all subrogation matters to be adjudicated through arbitration and, therefore, it has no need to assert any lien against plaintiff's recovery. Erie also argued that the trial court lacked subject matter jurisdiction. It asserted that its right to recover from defendant (the tortfeasor) was contractual and not in the nature of a lien. Finally, Erie argued that plaintiff could not ask the court to determine Erie's contractual rights by way of a motion, but rather should have filed an amended complaint seeking declaratory relief and served Erie with notice.

¶ 12    On October 25, 2010, the trial court granted Erie's motion and vacated its October 12, 2010, order. The court found that Erie had not asserted any lien against plaintiff's recovery; that Erie had an independent claim for relief filed with Arbitration Forums; that plaintiff's settlement does not affect Erie's right to recovery; and that Erie has no interest in plaintiff's settlement funds.

¶ 13    On November 22, 2010, plaintiff moved to enforce the judgment, vacate the October 25, 2010, order, and adjudicate Erie's lien. He argued that his attorneys never received any communication from Erie stating that they were not to act in any manner to recover the payments Erie made for plaintiff's medical expenses or that Erie was going to proceed on its own against defendant. Plaintiff also challenged Erie's assertion that it was not timely provided notice of plaintiff's motion to adjudicate the lien. Plaintiff further argued that plaintiff and defendant's settlement agreement was binding and should be enforced by the court and that the common fund doctrine provided the court with authority to adjudicate the lien.

¶ 14    On February 14, 2011, after a hearing, the trial court vacated its October 12 and October 25, 2010, orders. The court: (1) found that it had jurisdiction to adjudicate Erie's medical payments lien; (2) granted the motion to adjudicate Erie's lien; (3) granted the motion to enforce the settlement; (4) reduced Erie's $10,000 lien by one-third pursuant to the common

fund doctrine; and (5) denied plaintiff's and Erie's cross-motions for sanctions. Erie appeals.

¶ 15                                    II. ANALYSIS

¶ 16    Erie argues that the trial court erred in finding that the common fund doctrine applied and, thereby, reducing its medical payments claim to account for attorney fees. "Whether the common fund doctrine applies to any particular case is a question of law which we review *de novo*." *Linker v. Allstate Insurance Co.*, 342 Ill. App. 3d 764, 770-71 (2003).

¶ 17    Illinois law reflects the long-standing general rule that the prevailing party bears the costs of litigation, unless otherwise provided for in a statute or by agreement between the parties. *Brundidge v. Glendale Federal Bank, F.S.B.*, 168 Ill. 2d 235, 238 (1995). The common fund doctrine, which is an exception to the general rule, allows an attorney who "creates, preserves, or increases the value of a fund in which others have an ownership interest to be reimbursed from that fund for litigation expenses incurred, including counsel fees." *Morris B. Chapman & Associates, Ltd. v. Kitzman*, 193 Ill. 2d 560, 572-73 (2000). The doctrine is based on the court's inherent equitable powers and the rationale that fees and expenses incurred in creating the fund be apportioned among those who benefit from its creation. *Brundidge*, 168 Ill. 2d at 238; see also Beth C. Boggs, *An Insurer's Rights in Illinois Under the Common Fund Doctrine*, 89 Ill. B.J. 242, 242 (2001) ("doctrine is based on the equitable principle that an attorney who creates a fund in a personal injury case should in equity and good conscience be entitled to compensation for services rendered").

¶ 18    Courts have applied the common fund doctrine in numerous types of civil litigation, including insurance subrogation claims, class actions, and wrongful-death cases involving an intervenor. *Morris B. Chapman*, 193 Ill. 2d at 573; *Scholtens v. Schneider*, 173 Ill. 2d 375, 388 (1996). The doctrine protects attorneys dealing with nonparticipating insurance companies. See Boggs, *supra*, at 242. To be entitled to fees under the common fund doctrine, an attorney (*e.g.*, an injured plaintiff's attorney) must show that: (1) the fund was created as a result of legal services the attorney performed; (2) the subrogee (*e.g.*, an insurance company) did not participate in the creation of the fund; and (3) the subrogee benefitted or will benefit from the fund's creation. *Country Mutual Insurance Co. v. Birner*, 293 Ill. App. 3d 452, 456 (1997).

¶ 19    The case law invariably addresses two issues. First, many cases address the promptness and clarity of an insurer's notice that it will represent its own subrogation interest. See *Ritter v. Hachmeister*, 356 Ill. App. 3d 926, 930 (2005) ("mere token protest against application of the doctrine is insufficient"); compare *Perez v. Kujawa*, 234 Ill. App. 3d 957, 960-62 (1992) (doctrine not applied where the insurer "promptly and unequivocally" advised the plaintiffs and their attorneys of its intention to pursue its own subrogation claim and disclaimed any intention to employ the plaintiffs' attorney; letter sent over month before the plaintiffs' attorney filed suit), and *Tenney v. American Family Mutual Insurance Co.*, 128 Ill. App. 3d 121, 124 (1984) (where the plaintiff attorney was promptly informed by his client's insurer via letter that the insurer intended to deal directly with the defendant's insurer regarding its claim–such a letter being subsequently referred to in case law as a *Tenney* letter–and where the plaintiff did not file suit until nine months after notification, the insurer was an unwilling

participant and the plaintiff could not recover attorney fees under the doctrine), with *Meyers v. Hablutzel*, 236 Ill. App. 3d 705, 708-09 (1992) (affirming application of common fund doctrine where the plaintiff filed suit before the insurer paid medical expenses and informed the plaintiff's attorney of its subrogation rights and its decision not to hire the plaintiff's attorney), and *Powell v. Inghram*, 117 Ill. App. 3d 895, 899-900 (1983) (attorney filed suit 10 months before insurer indicated that, while it would not retain the plaintiff's attorney, it requested him *to protect its interests in the event of settlement*; court held that common fund doctrine applied because, although insurer refused to employ the plaintiff's attorney, it also sought to benefit from his services in obtaining a settlement from which insurer should be reimbursed).

¶ 20    A second common issue in the case law is whether the insurer *meaningfully* participated in the fund's creation. *Ritter*, 356 Ill. App. 3d at 930; *Birner*, 293 Ill. App. 3d at 457. The participation inquiry is critical because the common fund doctrine does not apply (*i.e.*, a plaintiff's attorney is not entitled to fees) when the attorney knowingly renders services for an unwilling recipient (*e.g.*, an insurance company). *Tenney*, 128 Ill. App. 3d at 124. The case law on this issue holds that, under certain circumstances, "an insurance company's mere writing of a letter to the plaintiff's attorney expressing its desire to represent its own interests, without more, is not enough to overcome the fund doctrine." *McGee v. Oldham*, 267 Ill. App. 3d 396, 401 (1994) (affirming equitable apportionment of fees where suit was filed 14 months before insurance company notified plaintiff's attorney of its intention to represent itself on its medical payments subrogation claim and where insurance company took passive position in the litigation–*i.e.*, it sought merely to protect its subrogation rights); see also *Powell*, 117 Ill. App. 3d at 899-900. Again, under certain circumstances, the insurance company must "show some participation in the creation of the fund reflecting more than a desire to protect its subrogation rights." *McGee*, 267 Ill. App. 3d at 401. For example, where an insurer makes a *bona fide* effort to participate in the litigation, but the plaintiffs succeed in foreclosing that option, the insurer has been held to have shown itself to be an unwilling recipient of the plaintiffs' attorney's services. *Ritter*, 356 Ill. App. 3d at 931 (affirming trial court's order directing full reimbursement to the insurer without any reduction for attorney fees); see also *Meyers*, 236 Ill. App. 3d at 709 (suggesting that the insurer may join as a plaintiff, file an interpleader counterclaim, and participate in settlement negotiations).

¶ 21    Here, the central question is whether Erie promptly and unequivocally notified plaintiff and/or his attorneys that it desired to represent its own subrogation claim. Again, this inquiry is critical because the common fund doctrine applies where the insurer's "notification is equivocal in that the insurer requests payment from the plaintiff upon settlement of its claim against the defendant." *Ritter*, 356 Ill. App. 3d at 931. In *Birner*, Country Mutual Insurance Company, the plaintiffs' insurer, paid the plaintiffs' medical bills and sent a letter to the defendant's insurer (American Family), claiming a subrogation lien for its payments. Over one year later, the plaintiffs retained an attorney. The next day and the following week, Country Mutual notified the plaintiffs' attorney that it had a right of recovery of its medical payments on the plaintiffs' behalf and that it was exercising its right via intercompany arbitration; it requested that the attorney not include its payments in any settlement. The next

day, the plaintiffs' attorney filed suit against the defendant, seeking, *inter alia*, recovery of the medical expenses that Country Mutual had paid on the plaintiffs' behalf. That same day, Country Mutual filed its arbitration claim. On appeal, the court held that equitable apportionment was proper because "Country Mutual's words and actions were neither prompt nor unequivocal." *Birner*, 293 Ill. App. 3d at 457. The court noted that Country Mutual did not file a lawsuit or commence arbitration until over one year after it became aware of the accident and only after (albeit on the same day that) the plaintiffs had retained an attorney and filed suit. *Id.* at 457. Also, in the interim, Country Mutual sent a letter to American Family *requesting that it forward from any settlement Country Mutual's subrogation amount. Id.* The court held that Country Mutual's letter to the plaintiffs' attorney was not clear and direct and that, as settlement approached, Country Mutual did not respond to the plaintiffs' attorney's request that it reconsider its position. *Id.* Finally, the court held that, even if the letter to the plaintiffs' attorney had been more direct, it was not sufficient to overcome application of the common fund doctrine, because Country Mutual did not meaningfully participate in reaching the settlement. *Id.*

¶ 22      In *Taylor v. American Family Insurance Group*, 311 Ill. App. 3d 1034 (2000), five months before the plaintiffs' attorney filed suit, the plaintiffs' insurer sent its first of three *Tenney* letters to the attorney, advising her that it planned to represent its own subrogation interests as to the medical payments it had advanced to the plaintiffs and that it did not solicit the attorney's services or recognize any lien upon the subrogation amount; also, the insurer stated that it was notifying the defendant's insurer to issue a separate draft representing its subrogation amount (thereafter referred to as a subrogation *lien*) and naming it as the sole payee and subrogee of the insured under the insurance contract and further noting that the separate draft " 'will most likely be coming from the amount of the settlement' " between the plaintiffs and the defendant's insurer. *Id.* at 1036-37. Four months after the plaintiffs filed suit, their insurer filed its arbitration claim. Six months prior to the scheduled arbitration, a settlement agreement was reached that included the insurer's subrogation interests, and the plaintiffs' attorney requested one-third of that amount for attorney fees. The insurer rejected the check, noting its pending arbitration. The plaintiffs' attorney responded that she had included the insurer's claim in the settlement because the insurer would not release its subrogation lien on the plaintiffs' file with the defendant's insurer. The plaintiff's attorney filed suit to adjudicate the lien, and the trial court awarded her one-third of the subrogation amount pursuant to the common fund doctrine. In rejecting the insurer's argument that the doctrine did not apply, the appellate court noted that merely writing to the plaintiff's attorney that it does not desire him or her to represent its interest is insufficient to overcome the doctrine. *Id.* at 1039. Rather, the insurer must " 'show some participation in the creation of the fund reflecting more than a desire to protect its subrogation rights.' " *Id.* (quoting *McGee*, 267 Ill. App. 3d at 401). The court held that, although the insurer filed an arbitration petition, it did not contribute "in any meaningful way to reaching the settlement." *Id.* at 1041. The court stated that meaningful participation "must include some real and substantial action in creating the fund from which the subrogee wishes to recover." *Id.* (suggesting that it might involve the filing of a petition to intervene in the personal injury suit).

¶ 23      *Birner* and *Taylor* instruct that, even in cases where the insurer sends a letter that is or

purports to be a *Tenney* letter before the plaintiff files suit, the insurer may not overcome application of the common fund doctrine if the letter fails to be unequivocal and if the insurer does not meaningfully participate in the suit. *Taylor*, 311 Ill. App. 3d at 1041; *Birner*, 293 Ill. App. 3d at 457.[1]

¶ 24 Here, in a letter dated April 13, 2009, Erie asked Farmers to protect its interest at the time of settlement. This letter clearly shows that Erie was aware that there was a claim pending or that one would be made by plaintiff. The letter may also be reasonably interpreted as reflecting Erie's desire to assert a lien for its medical payments to plaintiff at the time of any settlement (*i.e.*, to include its $10,000 in medical payments in the settlement fund). See *Taylor*, 311 Ill. App. 3d at 1036-37 (treating such letter as asserting a subrogation lien). Clearly, Erie's letter is not an unequivocal instruction, such as a proper *Tenney* letter, notifying plaintiff, plaintiff's attorneys, or Farmers that it intended to collect its subrogation claim on its own, that it did not desire plaintiff's attorneys' assistance, and that Farmers should not include the $10,000 in medical payments in any settlement. See *Ritter*, 356 Ill. App. 3d at 930 ("[m]ore recent cases establish, however, that a mere token protest against application of the doctrine is insufficient"); *Birner*, 293 Ill. App. 3d at 457 (letter must be clear and direct); *McGee*, 267 Ill. App. 3d at 401 (insurance company must "show some participation in the creation of the fund reflecting more than a desire to protect its subrogation rights"); *Powell*, 117 Ill. App. 3d at 899-900 (plaintiff's attorney filed suit 10 months before insurer indicated that it would not retain plaintiff's attorney but requested him to protect its interests in the event of settlement; court held that common fund doctrine applied because insurer refused to employ plaintiff's attorney while it also sought to benefit from his services in obtaining a settlement from which insurer should be reimbursed). Even if Erie's April 13, 2009, letter does not reflect its knowledge of an impending suit, Erie was certainly on notice of plaintiff's suit by April 2010, after Arbitration Forums granted Farmers' deferment request "due to companion claims and/or suits pending." However, Erie did not at that time send a proper letter to the parties. Rather, on February 17, 2010, Erie sent an *arguably* sufficient *Tenney*-type letter *to Arbitration Forums only*, claiming that it was protected under the arbitration agreement and requesting that the attorney not include its recovery in any suit and that Farmers directly pay Erie its medical payments subrogation amount. It was only after plaintiff moved to adjudicate the lien that Erie argued to plaintiff and his attorneys that it desired no part in the settlement proceeds. Finally, we need not address at length whether Erie meaningfully participated in the creation of the settlement fund, because Erie neither advances the point nor do the facts reflect that it, for example, attempted to intervene or otherwise meaningfully participate in the trial court matter. Accordingly, the trial court did not err in applying the common fund doctrine.

_____

[1]We do not mean to imply that, to avoid application of the common fund doctrine, an insurer must always meaningfully participate in the plaintiff's suit. *Tenney*, which remains good law, and its progeny instruct that, where the insurer sends a proper (*i.e.*, prompt and unequivocal) letter to the plaintiff and/or his or her attorney, stating that the insurer desires to represent its own subrogation interests, this renders the insurer an unwilling participant so long as equitable considerations do not mandate a different result.

¶ 25    Erie attempts to avoid our conclusion that the common fund doctrine applies by arguing that it never even asserted a lien against plaintiff's recovery. It contends that the letter it sent to Farmers requesting that Farmers protect Erie's interest at the time of settlement does not show that Erie had a lien; rather, it merely asked Farmers to protect its interest at the time of settlement. (Erie does not explain what this statement means.) Erie notes that the intercompany arbitration agreement with Farmers requires all subrogation matters to be adjudicated through arbitration and that it, therefore, had no need to assert any type of lien against plaintiff's recovery. Erie further claims that it did not assert any lien because it had no knowledge of plaintiff's claim; it filed its own independent claim for intercompany arbitration; and an insurer's ability to recover for payment is *contractual* and not in the form of a *lien*. Erie again urges that it had no knowledge of plaintiff's claim or the proposed settlement and that, had it known, it could have filed a complaint for declaratory relief or sent a strongly worded *Tenney* letter to notify plaintiff's attorneys not to do any work on Erie's behalf, because it was handling the matter in another forum.

¶ 26    We reject Erie's claim. It is true that an insurer has the right to file suit on its own behalf to recover on its subrogation claim. *Tenney*, 128 Ill. App. 3d at 124. It is also true that an insurer's right to subrogation for medical payments is determined by the terms of the insurance contract. *Meyers*, 236 Ill. App. 3d at 708. However, "[t]he common fund doctrine is a common law rule of general application" and "applies generally to all funds created, increased or preserved by a party in which others have an ownership interest." *Scholtens v. Schneider*, 173 Ill. 2d 375, 385-86 (1996). The obligation to pay fees under the common fund doctrine, which is quasi-contractual, is independent of any insurance contract or subrogation agreement and is "resting instead upon equitable considerations of *quantum meruit* and the prevention of unjust enrichment." *Id.* at 390-91; see *Baier v. State Farm Insurance Co.*, 66 Ill. 2d 119, 126 (1977) (rejecting insurer's argument that application of the common fund doctrine would violate the subrogation contract between insurer and its insured); *Stevens v. Country Mutual Insurance Co.*, 387 Ill. App. 3d 796, 802-03 (2008) (the plaintiff's attorney's "claim for attorney fees under the common-fund doctrine does not depend upon the insurance-policy language between [the plaintiff] and [his insurer]"; holding that the fact that the insurance policy allowed recovery for medical payments made through underinsured-motorist coverage provision did not negate the insurer's obligation to pay the plaintiff's attorney for his services, where the insurer benefitted from the common fund that the attorney's efforts created). Erie's argument fails because application of the common fund doctrine is independent of the parties' insurance contract.

¶ 27    For the same reason, we also reject Erie's argument that the trial court had no subject matter jurisdiction over its subrogation claim. Erie notes that, while plaintiff received a *judgment* before any ruling was issued in the arbitration matter, Erie *filed* its arbitration claim before plaintiff filed his personal injury suit. Erie argues that the trial court's ruling gave no deference to the fact that Erie's rights were already pending before another tribunal. In Erie's view, the trial court, therefore, had no subject matter jurisdiction over the subrogation issue. We reject Erie's argument because, as the foregoing authority shows, the issue of attorney fees is independent of any contractual agreement between Erie and plaintiff and, under these facts, application of the common fund doctrine was not improper.

¶ 28　　　　In another attempt to avoid application of the common fund doctrine, Erie argues that the trial court lacked personal jurisdiction over it. Erie contends that it first received notice that its "lien" (of which it claims it had no knowledge) was going to be adjudicated when it received in the mail a copy of plaintiff's October 5, 2010, motion to adjudicate the lien. Erie argues that the common fund doctrine may not be invoked as a mechanism to dismiss its separate arbitration claim and that the doctrine does not give the trial court personal jurisdiction over a nonparty, unless that party is properly served with a summons (which Erie claims was never done here). We reject Erie's claim because, as previously noted, Erie had notice of plaintiff's (actual or potential) suit as early as April 13, 2009 (when Erie asked Farmers to protect its interests in any settlement), and certainly by April 2010 (after Arbitration Forums granted Farmers' deferment request "due to companion claims and/or suits pending"). Plaintiff did not move to adjudicate the lien until October 25, 2010, after the parties had settled and after Erie could have intervened and clarified that it was pursuing its subrogation claim in another forum. However, prior to settlement, Erie did not send a letter to the parties or take any other action. Erie now seeks to avoid application of an equitable doctrine by claiming that the trial court had no personal jurisdiction over it after it sent a letter to Farmers requesting that its interests be protected upon any settlement. We reject its claim.

¶ 29　　　　　　　　　　　　　　　　III. CONCLUSION

¶ 30　　　　For the foregoing reasons, the judgment of the circuit court of Kane County is affirmed.

¶ 31　　　　Affirmed.