STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Appellant, v. GELINE and others, Respondents.

*No. 170. Argued September 10, 1970.—Decided October 9, 1970.*
(Also reported in 179 N. W. 2d 815.)

For the appellant State Farm Mutual Automobile Insurance Company there was a brief by *Kivett & Kasdorf,* attorneys, and *James P. Reardon* of counsel, and oral argument by *Mr. Reardon* and *Mr. James R. Gass,* all of Milwaukee.

For the respondents Max E. Geline, Astrea Conover, and Donald J. Conover, Sr., there was a brief and oral argument by *Max E. Geline* of Milwaukee.

For the respondent Allstate Insurance Company there was a brief by *Snyder, Fisher, Lee & Lilly* and *Sydney B. Lilly,* all of Milwaukee, and oral argument by *Sydney B. Lilly.*

For the respondent and cross appellant Associated Hospital Service, Inc., there was a brief by *Foley, Capwell, Foley & Seehawer* of Racine, and oral argument by *Rex Capwell.*

ROBERT W. HANSEN, J.   Is the attorney for the plaintiff in a personal injury action entitled to a fee from subrogated insurers paid out of a settlement of the case?

*Parties in interest.*   Involved in the determination of the issue presented are: (1) The plaintiffs, here the Conovers, acting for themselves and their children; (2) their attorney, here Max E. Geline, practicing attorney in Milwaukee county; and (3) the subrogated insurers, here State Farm and Associated Hospital Service.

*Retainer agreement.*   To collect their claim for their damages the plaintiffs retained the attorney agreeing to pay "one-third (⅓) of all sums collected," which must be read to mean one third of sums collected for them. The retainer agreement also provided: "Medical expenses and charges made by doctors in connection with client's claim are obligations of client. . . . The attorney is not responsible to pay any medical bills." This requires plaintiffs to pay, out of their two thirds, doctors or hospital bills which they had or have to pay as a result of injuries sustained in the accident. However, the phrase "medical expenses and charges made by doctors" does not include claims of insurers based on payments made to their insureds under health or hospitalization insurance policies. Here, before the settlement was made, State Farm had paid to plaintiffs $2,209 under one such

policy, and Associated Hospital Service had paid the plaintiffs $5,042.57 under a group coverage policy.

*Status of State Farm.* State Farm made its payments to the Conovers under a "loan receipt" arrangement. The loan receipt and agreement provided that the loan was repayable only to the extent of the net recovery by the insured from third parties, with the insureds required to prosecute all reasonable claims. Substance, not form, is controlling, and this court has held the loan receipt label to be a subrogation agreement, "in substance its right to subrogation parading in disguise." [1] So, as is not seriously challenged, State Farm is the holder of a subrogated right exactly as if the payment had been labeled a "subrogation receipt" instead of a "loan receipt."

*Status of Associated Hospital.* The Associated Hospital payments to the Conovers, under a group policy executed with Mr. Conover's employer, were made subject to a subrogation and assignment clause providing that the insurer "shall be subrogated" as to rights for special damages, and also that such rights as to and up to the amount of payments made under the policy were "assigned to Surgical Care [and Associated Hospital Service] to that extent." Such contractual provision for subrogation and assignment is valid in this state.[2] It is clear that Associated Hospital, like State Farm, has a subrogated interest to the extent of payments made by them in any recovery by their insured from a third party or his insurer as a result of the negligence of such third party.

*Fee from plaintiffs.* As to the plaintiffs, the settlement secured or amount collected for them was $15,748.43. Payments under the insurance policies had been made

[1] *Kopperud v. Chick* (1965), 27 Wis. 2d 591, 595, 135 N. W. 2d 335.

[2] *Associated Hospital Service v. Milwaukee Automobile Mut. Ins. Co.* (1967), 33 Wis. 2d 170, 147 N. W. 2d 225.

before the case was settled. No benefits to plaintiffs were involved in either State Farm or Associated Hospital Service securing full or partial reimbursement for payments made by them under their policies. Here there is no reason to hold that the attorney was retained by plaintiffs to collect from or for State Farm or Associated Hospital. It could and would be different where there was a dispute or denial of liability under the policies by the insurers. Here there is no showing that the plaintiffs needed or wanted or hired legal counsel to be paid by State Farm or Associated Hospital Service. Unless dispute arose, payment of the premiums was the only cost involved in being paid by State Farm or Associated Hospital. Obviously, the retainer agreement does not obligate the plaintiffs to pay one third of any money collected for State Farm or Associated Hospital as reimbursement for payments made by them under their policies.

*Law and equity.* As to the power of a court to require State Farm and Associated Hospital to pay a reasonable fee to plaintiff's lawyer for collecting sums received by them in the settlement, the issue is whether sound principles of contract law or equally sound principles of equity law are to be followed. These insurers stress the traditional legal rule that an attorney's right to remuneration for professional service rests on contract, express or implied.[3] Respondent-attorney relies solely on the equitable concept that an attorney who renders service in creating a trust fund may in equity be allowed compensation out of the whole fund from those who directly benefit from its accumulation. The equitable approach has been termed the "fund doctrine." It appears to have had its birth in an early Ohio[4] case

---

[3] 7 Am. Jur. 2d, *Attorneys at Law* (1963), p. 166, sec. 204.

[4] "Where the assured, as in case of partial insurance, sustains a loss, in excess of the reimbursement or compensation by the underwriter, he has an undoubted right to have it satisfied by action against the wrong-doer. But if, by such action, there

but the concept, as applying to attorney fees, was first specifically articulated in Nebraska.[5] Since then the jurisdictions facing this issue for the first time have been nearly unanimous in awarding reasonable attorney's fees. Tennessee,[6] Illinois,[7] New York,[8] and recent-

comes into his hands, any sum for which, in equity and good conscience, he ought to account to the underwriter, reimbursement will, to that extent, be compelled in an action by the latter, based on his right in equity to subrogation. But the assured will not, in the forum of conscience, be required to account for more than the surplus, which may remain in his hands, after satisfying his own excess of loss in full, and his reasonable expenses incurred in its recovery; unless the underwriter shall, on notice and opportunity given, have contributed to, and made common cause with him, in the prosecution." *Newcomb v. Cincinnati Ins. Co.* (1872), 22 Ohio St. 382, 388, 10 Am. Rep. 746.

[5] "The applicable rule is that where the holder of the subrogation right does not come into the action, whether he refuses to do so or acquiesces in the plaintiff's action, but accepts the avails of the litigation, he should be subjected to his proportionate share of the expenses thereof, including attorney's fees." *United Services Automobile Asso. v. Hills* (1961), 172 Neb. 128, 133, 109 N. W. 2d 174, 2 A. L. R. 3d 1422. *See also: Krause v. State Farm Mut. Automobile Ins. Co.* (1969), 184 Neb. 588, 169 N. W. 2d 601.

[6] *Tennessee Farmers Ins. Co. v. Pritchett* (1964), 54 Tenn. App. 410, 391 S. W. 2d 671. (Where automobile collision insurer which had paid amount of damage was advised that its insured had engaged an attorney to recover his damages from motorist who collided with such automobile and did nothing to protect its interest from necessary burden of attorney's fees, collision insurer could not recover amount which it had paid to its insured without paying for services of attorney who had obtained settlement from third party.)

[7] *Vignali v. Farmers Equitable Ins. Co.* (1966), 71 Ill. App. 2d 114, 216 N. E. 2d 827. (Plaintiff sued tavern operator under dram shop law and two insurance companies under uninsured motorist clause. Insurance companies subrogated to recovery against tavern subject to attorney's fees. The court approved the deduction of attorney's fees and expenses and concluded that since such expenses would have been paid by the insurer if it had initiated the action the result should have been the same even if such recovery was secured by the insured.)

[8] *Rosenthal Jewelry v. St. Paul Fire Ins. Co.* (1964), 21 App. Div. 2d 160, 249 N. Y. Supp. 2d 208, order affirmed, 17 N. Y. 2d

ly Texas [9] have followed this approach. Only Georgia [10] has refused to award fees.

## *"Fund doctrine."*

Because the attorney may not receive payment from his client for that portion of a settlement payable to holders of subrogated or assigned rights and particularly in light of the otherwise unjust enrichment of the holders of those rights, we find the superior merit in the equity approach and accept the rationale of the "fund doctrine" cases.

The adoption of the "fund doctrine" is subject to the following limitations:

*Creation of fund.* It is a prerequisite to the applicability of the "fund doctrine" that the fund has been

857, 218 N. E. 2d 327, 271 N. Y. Supp. 2d 287. (Insurer paid jewelry loss to jeweler and brought suit against third party. Result of suit was a recovery of loss paid and an additional element of loss of profits to the jeweler [insured]. The court approved an allocation of litigation expenses between the two elements, the amount paid by the insurer and the loss of profits recovered for the insured. That the parties are reversed from the instant case makes no difference. The principle is the same. The party sharing in a fund created by another party is liable for the allocated expenses of creating the fund.)

[9] *State Farm Mut. Automobile Ins. Co. v. Elkins* (Tex. Civ. App. 1970), 451 S. W. 2d 528. (Insured indemnified by insurer for collision loss and in subsequent action against third party insured recovers collision damages. Court held insured holds amount for insurer and insurer can recover against the insured. "But where the insurer has recovered against the insured, the pro rata cost and expenses incurred by insured in obtaining the money are borne by the insurer.")

[10] *Commercial Union Ins. Co. v. Scott* (1967), 116 Ga. App. 633, 158 S. E. 2d 295, reaffirmed in *First of Georgia Ins. Co. v. Horne* (1969), 120 Ga. App. 379, 170 S. E. 2d 452. (Attorney denied compensation from a subrogated insurer who benefited from a fund created by the attorney because the attorney's motive was to obtain an adequate recovery for himself, rather than to obtain reimbursement for the insurer. In neither of the two Georgia decisions articulating this position was there a dis-

created or brought into being solely by the efforts and steps taken by the attorney who claims an equitable right to fees therefrom. Where the attorney did not in fact create such fund, he would have no basis in equity for claiming a fee from it.[11]

*Notice.* It is a prerequisite to seeking or securing a fee from holders of subrogated interests that notice be given to such holders not only that a claim is being asserted or action has been commenced, but also that, unless the holder elects to join in the action as a party thereto, a reasonable fee for services rendered in accomplishing the collection of its subrogated interest will be requested of the court in any settlement or court disposition. Timely notice is required to give the holder of a subrogated interest the right to join the action and to be represented by legal counsel of its own choosing if it so elects.

*Joinder.* The "fund doctrine" applies where the holder of a subrogated right does not become a party to the lawsuit. It is argued here that, if the holder of a subrogated right is or becomes a necessary party to a complete determination or settlement of the questions involved in the lawsuit, the plaintiff by his attorney could move to have him made a party to the action. That is true.[12] It is also true that a defendant seeking a complete determination or settlement of claims arising from an accident or incident, could move for such interpleader.[13] The reason plaintiff's attorneys seldom move to have holders of subrogated interests joined as parties is probably psychological. No plaintiff's attorney wants to dilute the David versus Goliath aspect. To the jury the in-

cussion of the "fund doctrine." In that sense, they fail to rebut the articulated theories of contrary decisions.)

[11] *See: Morateck v. Milwaukee Automobile Mut. Ins. Co.* (1967), 34 Wis. 2d 95, 148 N. W. 2d 704.

[12] *See* sec. 260.11 (1), Stats.

[13] Sec. 260.12, Stats. *See also: Borde v. Hake* (1969), 44 Wis. 2d 22, 170 N. W. 2d 768.

jured person is standing alone against a defendant and his insurer. The reason defendants and their insurers seldom seek to have holders of subrogated interests named as parties is a lively awareness that tomorrow will likely bring a reversal of situations with the insurer of a defendant the holder of a subrogated right of a plaintiff. In any event the insurer would rather settle the whole claim with the fewest parties and avoids the problem altogether when he settles before suit is brought. Such speculation aside, the important statute is the one that gives any "necessary party to a complete determination or settlement of the questions involved" in a lawsuit the right to independently move to be made a party thereto.[14] Given notice by the plaintiff's attorney of the pendency of the action and afforded the opportunity to participate in such action, the holder of a subrogated right can elect to do its own collecting of amounts due by efforts of its own attorney or, in the alternative, to let plaintiff's attorney accomplish the desired result for it. In the second situation, it has no reason to expect plaintiff's attorney to serve as its collector without fee for his services.

*Reasonable fee.* It seems obvious that the fee due the plaintiff's attorney and chargeable to the holder of a subrogated interest is to be a reasonable fee for the services actually performed. There is no agreement or contractual arrangement setting the amount of such fee in advance. The "fund doctrine" requires the court that awards a fee based on equitable grounds to find and determine what a reasonable fee for the services performed would be, and have in the record the factors evaluated in determining such fee.

Accepting the "fund doctrine" and applying it to the record in this case, two difficulties present themselves.

---

[14] Sec. 260.11 (1), Stats.

*Requirement of notice.* First, did Associated Hospital and State Farm receive the required notice and opportunity to participate in the claim against Bauke and Allstate? As to Associated Hospital, it is clear that they were on notice for a very considerable period of time. Their affirmative acts and communications establish that they were not only relying upon Allstate to recognize their subrogation rights but also relying upon plaintiff's attorney to accumulate the fund out of which they would be paid. As to State Farm, it is its contention that the first they knew of the lawsuit was when they provided benefits under the medical coverage plan on December 19, 1967. This would be insufficient notice affording them inadequate time to elect to join the lawsuit and be represented by their own counsel in collection efforts. However, State Farm had been informed by plaintiff's attorney as early as April 27, 1967, of possible liability under the medical coverage policy. On July 24, 1967, they responded, and along with a determination of their coverage remarked, "Agent Zimmerman has advised us that you too are aware of our subrogation rights and the fact that upon payment our subrogation claim will be presented to Allstate for the MPC payments which we have made." The question is close but we would find that State Farm had actual knowledge of the lawsuit and the efforts to collect their subrogated rights along with damages claimed by plaintiff. Both notices would be defective in the failure to notify the subrogated rights holder of payment by them of a reasonable fee for services performed by plaintiff's attorney. But adopting the "fund doctrine" in this state in this case is in some ways similar to "sunbursting." Therefore, in the instant case, we would not hold plaintiff's attorney to anticipation of either what the trial court or this court would do or require him to do in establishing an equitable basis for payment to him by State Farm and Associated Hospital for work performed by him from which they benefit.

*Test of reasonableness.* The second difficulty lies in determining whether the trial court properly or adequately established the basis of reasonableness for the fee it required State Farm and Associated Hospital to pay the plaintiff's attorney out of the portion of the fund payable to them. The trial court held, and we agree, that "said fund was and is subject in equity to the payment of reasonable compensation to said attorney" but then ordered $2,417.19 paid to plaintiff's attorney by State Farm and Associated Hospital "said sum representing the proportionate share of the expenses incurred in creating said sum, including the attorney fees." This accepts as the measuring stick a "proportionate share," making the agreement between attorney and client the sole determinative factor in establishing reasonableness of the fee due and owing the attorney. The retainer agreement provisions as to fee are a factor to be considered in determining reasonableness, but they are not the sole or only factor. As the Nebraska court said: ". . . The allowance depends upon consideration of all of the circumstances including the nature of the contract with the insured and the amount and the nature of the services rendered, and the other principles relating to the award of attorney's fees under the law." [15] We would also add that while a determination of liability is fundamental to and integrated with the recovery by the insured, it is to be considered a part of the services rendered by the attorney for the subrogated insurers. So the case must be returned to the trial court for the taking of testimony as to the amount and nature of the services rendered and all factors relevant to the establishing of a reasonable fee for the services performed.

*Interest on disputed sum.* State Farm asks for interest on the disputed sum. Associated Hospital does not. Allstate contends that they were at all times ready, will-

---

[15] *Krause v. State Farm Mut. Automobile Ins. Co., supra,* at page 596.

ing and able to deposit said funds into court but State Farm refused to accept such conditions of deposit, unless it received court costs and interest on its claimed money. This contention is supported by the trial court's findings of fact. However, as argued by State Farm, there is no evidence in the record that Allstate offered to tender the funds at a date earlier than December 2, 1968. The trial court cites no evidence that would support its finding that Allstate was at all times ready, willing and able. It is ordered that along with a determination of reasonable attorney's fees the trial court review its finding as to Allstate's offer to tender the funds. Allstate's liability for interest should run from the day of settlement to its first offer to tender the funds into court.

*By the Court.*—Judgment reversed, and cause remanded with directions for further proceedings pursuant to the opinion.