(No. 47676.–

JAY BAIER, Appellee, v. STATE FARM INSURANCE COMPANY *et al.*—(State Farm Insurance Co., Appellant.)

*Opinion filed March 23, 1977.*

James J. Hoffnagle and Alfred C. Tisdahl, Jr., of Chicago (Taylor, Miller, Magner, Sprowl & Hutchings, of counsel), for appellant.

John Doyle, William J. Harte, Ltd., and Kevin M. Forde, Ltd., all of Chicago (William J. Harte and Kevin M. Forde, of counsel), for appellee.

MR. JUSTICE GOLDENHERSH delivered the opinion of the court:

Plaintiff, Jay Baier, appealed from the judgment of the circuit court of Cook County entered in favor of defendants, State Farm Insurance Company (hereafter defendant) and Allstate Insurance Company (hereafter Allstate), upon allowance of their separate motions for summary judgment. The appellate court affirmed the judgment in favor of Allstate, reversed and remanded as to defendant (28 Ill. App. 3d 917), and we allowed defendant's petition for leave to appeal. Plaintiff has conceded

the correctness of the affirmance of the judgment in favor of Allstate. The facts are adequately set forth in the opinion of the appellate court and need be only briefly stated here.

Plaintiff, an attorney, brought this action "individually and on behalf of persons similarly situated" to recover a fee for services allegedly beneficial to defendant. He had been employed by Richard Kinkaid to represent him in a claim for damages for personal injuries suffered on November 30, 1967, when an automobile driven by Kinkaid and one driven by Soren Jensen collided. The automobile driven by Kinkaid was insured by defendant, and the automobile driven by Jensen was insured by Allstate. Defendant paid Kinkaid $1,000, the maximum amount of medical coverage provided by the policy on the vehicle which he was driving, and required that he sign a document headed "Loan Receipt Under Medical Payments Coverage," in which he acknowledged receipt from defendant of the sum of $1,000 "as a loan without interest *** repayable only in the event and to the extent that any net recovery is made" from a tortfeasor in the collision on November 30, 1967. The loan receipt also provided that Kinkaid agreed that "if reasonable cause therefor exists, to make claim, and if necessary enter into and prosecute action against such person, corporations or parties through whose negligence the aforesaid expenses were incurred, or who may otherwise be responsible therefor with all diligence, in the undersigned's own name, and to set with respect to any such recovery as a trustee of the State Farm Mutual Automobile Insurance Company with respect to any such funds recovered to the extent of payment made hereon."

On June 3, 1968, plaintiff filed an action for Kinkaid, against Jensen, in the circuit court of Lake County. Defendant notified Allstate of its $1,000 medical payment to Kinkaid and that it claimed subrogation rights to $1,000 from any proceeds of Kinkaid's action against

Jensen. Plaintiff negotiated a settlement with Allstate in the amount of $12,000; defendant insisted on payment in full, and Allstate issued two drafts, one payable to Kinkaid and plaintiff in the amount of $11,000 and the other payable to defendant for $1,000.

Plaintiff received from Kinkaid a fee of one-third of the recovery of $11,000. Although plaintiff had no contract of employment with defendant and no authority to act for it, he requested, both before and after the settlement, that defendant pay him a reasonable fee for the services he had performed in recovery of its subrogation claim. Defendant refused these requests.

The parties are agreed that the circuit court entered summary judgment on the ground that as a matter of law plaintiff, by consenting to the method of settlement and payment, had waived any right to compensation from defendant. Plaintiff contends that summary judgment was erroneously entered for the reason that there was a genuine issue of material fact as to whether he had consented to the method of settlement and waived compensation. He argues that the settlement was effected because his client so directed and that he neither consented to the manner in which it was done nor waived compensation. Defendant contends that plaintiff knew that both it and Allstate considered the loan receipt a valid subrogation "lien" and that defendant denied that plaintiff was entitled to a fee from the subrogation recovery; and that by permitting Allstate to issue a draft payable to defendant alone, without requesting that he be named as a payee, or in failing to petition the circuit court to protect his claim, plaintiff, as a matter of law, consented to the method of payment and waived his lien and claim for compensation.

In holding that the circuit court erred in entering summary judgment the appellate court said:

"After reviewing the record before us, we feel that a genuine issue of material fact does exist. A

distinction must be drawn between the settlement of the tort suit against Jensen and any discussion of plaintiff's compensation. When plaintiff settled the suit with the manner of payment in two separate drafts, he was acting on behalf of Kinkaid, his client, ***. Furthermore, plaintiff never expressly disclaimed taking a reasonable fee for securing the $1000 but rather at several junctures in the proceedings specifically demanded such compensation.

*** Therefore, we find that waiver or consent was not proved as a matter of law, and that this factual issue must be decided by the trier of fact." (28 Ill. App. 3d 917, 921.)

We agree.

Having concluded that there was a genuine issue of material fact concerning the question of waiver, we reach the question whether the pleadings, affidavits and deposition contained in the record present a genuine issue of material fact concerning plaintiff's right to recover a fee. Plaintiff made no allegation that there was a contract of employment, express or implied, between him and defendant. He alleged, however, that defendant's recovery was effected "solely as a result of plaintiff's efforts ***." Plaintiff argues, and the appellate court held, that where a fund has been created as the result of legal services performed by an attorney for his client, and a subrogee of the client, who has done nothing to aid in creating the fund, seeks to benefit therefrom, the attorney is entitled to a fee from the subrogee in proportion to the benefit received by the subrogee. This theory of recovery by an attorney, known as the "fund doctrine," is based on the equitable concept that an attorney who performs services in creating a fund should in equity and good conscience be allowed compensation out of the whole fund from all those who seek to benefit from it. A number of jurisdictions have allowed attorney fees from the funds recovered

by subrogees in similar situations. See, *e.g., United Services Automobile Association v. Hills* (1961), 172 Neb. 128, 109 N.W.2d 174, 2 A.L.R.3d 1422 (1965); *State Farm Mutual Automobile Insurance Co. v. Geline* (1970), 48 Wis. 2d 290, 179 N.W.2d 815; *Forsyth v. Southern Bell Telephone & Telegraph Co.* (Fla. App. 1964), 162 So. 2d 916; *State Farm Mutual Automobile Insurance Co. v. Elkins* (Tex. Civ. App. 1970), 451 S.W.2d 528; *Tennessee Farmers Mutual Insurance Co. v. Pritchett* (1964), 54 Tenn. App. 410, 391 S.W.2d 671; *Washington Fire & Marine Insurance Co. v. Hammett* (1964), 237 Ark. 954, 377 S.W.2d 811; contra, *Commercial Union Insurance Co. v. Scott* (1967), 116 Ga. App. 633, 158 S.E.2d 295; *Wyoming Farm Bureau Mutual Insurance Co. v. Mondale* (1972), 160 Mont. 239, 502 P.2d 39.

Defendant contends that in applying the fund doctrine the appellate court effected a substantial change in the subrogation law of this State. It argues that the doctrine should not be adopted by this court for the reasons that it violates the prior contract between the subrogor and the subrogee, that it may allow an attorney to recover a fee in excess of that previously contracted for with his client, and that it places an attorney in a position of conflict of interest between his client and the subrogee. It argues too that if the court adopts the fund doctrine, the decision should be given prospective application only and that guidelines set be set for the circuit courts for "the handling of this case and others arising under it ***."

Citing *Remsen v. Midway Liquors, Inc.*, 30 Ill. App. 2d 132, *Vignali v. Farmers Equitable Insurance Co.*, 71 Ill. App. 2d 114, and *Chicago, St. Charles & Mississippi R.R. Co. v. Larned*, 26 Ill. 218, defendant contends that prior to the decision of the appellate court in this case, the provision of the loan receipt that the subrogee would be reimbursed to the extent of any net recovery effected by the subrogor had been construed to mean that after the deduction of costs and attorney fees the subrogated claim

would be paid in full from the net recovery. From this premise defendant argues that the adoption of the fund doctrine effected a substantial change in the law of subrogation in this State. We do not agree that either *Remsen* or *Vignali* supports defendant's contention. We note parenthetically that in *State Farm Mutual Automobile Insurance Co. v. Geline* (1970), 48 Wis. 2d 290, 179 N.W.2d 815, the Supreme Court of Wisconsin cited *Vignali* as supporting the position espoused by plaintiff. (See 48 Wis. 2d 290, 299 n.7, 179 N.W.2d 815, 820 n.7.) *Larned* did not involve a subrogee seeking to benefit from a fund created by reason of the services rendered by an attorney for his client. We are of the opinion that the application of the fund doctrine to this case effects no change in the subrogation law of this State.

Defendant argues that application of the fund doctrine would violate the provision of the loan receipt which required Kinkaid to reimburse it in the event and to the extent of any *"net* recovery" made by him from another. Kinkaid has reimbursed defendant the full $1,000 from his *net* recovery, and the agreement between them has been fully performed. Any recovery by plaintiff from defendant would not violate the contract between Kinkaid and defendant.

Defendant's contention that the fund doctrine may allow an attorney to recover a fee in excess of that contracted for with his client is premised on the assumption that the attorney will base his fee to the client on the gross verdict or settlement and then receive an additional fee from the subrogee. Plaintiff's fee from Kinkaid was based on the recovery effected for him, and we do not perceive in what manner the payment by defendant of a fee to plaintiff can be violative of plaintiff's agreement with his client.

Citing *Strong v. International Building Loan & Invest. Union*, 183 Ill. 97, as authority for the proposition that an attorney may not accept employment from adverse liti-

gants at the same time and in the same controversy, defendant argues that application of the fund doctrine places an attorney in a position of conflict of interest between his client and the subrogee. The fee, if any, which an attorney receives from a subrogee under the fund doctrine is in partial payment for his services in creating the fund from which the subrogee benefits. In the creation of the fund the client and the subrogee are not adverse litigants; rather they have the same common interest in creating the fund from which each will benefit. Concededly, after the fund is created, conflicts may arise between the subrogor and subrogee as to whether, or how much, the subrogee is entitled to recover, or as here between the attorney and the subrogee as to the attorney's right to, or the amount of, a fee. A conflict which arises in the distribution of the fund, however, does not involve the type of adverse interest which would preclude an attorney from properly representing both the subrogor and subrogee.

Defendant contends next that if, under the circumstances of this case, it is required to pay an attorney fee, a physician or hospital who had rendered medical services to a claimant might also be required to pay a proportionate share of the attorney fee. This record presents no such question, and the contention need not be further discussed.

Defendant points out that in *State Farm Mutual Automobile Insurance Co. v. Geline*, 48 Wis. 2d 290, 179 N.W.2d 815, in which Wisconsin adopted the fund doctrine, the court set standards for maintaining this type of action. It argues that this court should issue "appropriate guidelines" to govern the handling of this case and others similar to it. The "guidelines" we are asked to issue would require the decision of questions not presented on this record. Issues of law or fact which might arise upon remand are not now before us.

Citing *Molitor v. Kaneland Community Unit District*

*No. 302*, 18 Ill. 2d 11, defendant contends that "the application of the new 'fund-doctrine' should be applied prospectively only to avert the inequity and undue hardship upon the defendant and others similarly situated who relied in good faith upon prior Illinois law." Our holding in *Molitor* was given prospective application because it represented a change in the law and its retroactive application would have resulted in undue hardship on those who had relied upon the prior law. No such change in prior Illinois law is effected by this decision.

For the reasons stated, the judgment of the appellate court is affirmed.

*Judgment affirmed.*