2020 IL App (2d) 190411
No. 2-19-0411
Opinion filed June 10, 2020

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| SANDRA MORUZZI and KAISER LAW, | ) | Appeal from the Circuit Court |
| | ) | of Du Page County) |
| Plaintiffs-Appellants, | ) | |
| | ) | |
| v. | ) | No. 15-MR-1639 |
| | ) | |
| CCC SERVICES, INC., d/b/a Country | ) | |
| Preferred Insurance Company, | ) | Honorable |
| | ) | Bonnie M. Wheaton, |
| Defendant-Appellee. | ) | Judge, Presiding. |

JUSTICE ZENOFF delivered the judgment of the court, with opinion.
Justices Jorgensen and Schostok concurred in the judgment and opinion.

**OPINION**

¶ 1    Plaintiffs, Sandra Moruzzi and Kaiser Law (Kaiser), appeal two orders granting summary judgment in favor of defendant, CCC Services, Inc., d/b/a Country Preferred Insurance Company (Country).[1] Plaintiffs filed a declaratory judgment action seeking construction of a Country automobile policy issued to Moruzzi and in effect when Moruzzi was injured by an underinsured driver. The trial court found that Country was entitled to set off the medical payments benefits that

---

[1]The record shows that defendant's correct name is "CCC Services, Inc., d/b/a Country Preferred Insurance Company," but the caption was never corrected from "CC Services, Inc." in the trial court.

it paid to Moruzzi against its policy limits after Moruzzi obtained a settlement from the tortfeasor. The court also found that Kaiser was not entitled to attorney fees from Country under the common-fund doctrine. We affirm in part and reverse in part.

¶ 2                                    I. BACKGROUND

¶ 3      On October 18, 2013, Moruzzi was injured when she was struck by an underinsured driver (Townsend). As a result of the accident, Moruzzi's total damages were $350,000. Kaiser is the law firm that represented Moruzzi in her claim against Townsend.

¶ 4      Townsend was insured by Illinois Farmers Insurance Company (Farmers). The limit of Farmers' policy was $100,000. Farmers paid its policy limit without litigation. Moruzzi, through Kaiser, then looked to Country, her own insurer, for payment under her underinsured motorists (UIM) coverage. The limit for that coverage was $250,000. The Country policy also provided for medical payments (MP) of $100,000. Again, without litigation, Country paid Moruzzi the full $100,000 MP benefits.

¶ 5      Country then set off the $100,000 paid by Farmers and its MP of $100,000 from its liability limit of $250,000 and tendered Moruzzi a check for $50,000. Moruzzi initially declined Country's tender, claiming that Country had to set off the MP against her total damages rather than the limits of liability. In addition, Kaiser demanded that Country pay it one-third of the $100,000 MP benefits and another one-third of the $100,000 Farmers settlement as attorney fees. Kaiser maintained that its efforts saved Country $200,000 and thus established two "common funds" that benefited Country. When the parties failed to resolve the dispute, Moruzzi and Kaiser sued Country.

¶ 6                                  A. The Country Policy

¶ 7      The record contains a certified copy of the Country policy and amendatory endorsements in effect when Moruzzi was injured. According to the declarations page, Moruzzi paid premiums

for UIM coverage as well as MP coverage. The UIM coverage limit (maximum) is $250,000 per person, and the MP coverage limit (maximum) is $100,000.

¶ 8    The policy defines "underinsured motor vehicle" as "any type of motor vehicle *** for which the sum of all liability bonds or policies at the time of an accident are less than *the limit of this insurance*." (Emphasis added.)

¶ 9    Section 2 of the policy is titled "Uninsured-Underinsured Motorists, Coverage U." In this section, the policy (and the amendatory endorsement attached thereto) states: "We will pay *damages* which an insured is legally entitled to recover from the owner or operator of an *** underinsured motor vehicle because of bodily injury sustained by an insured and caused by an accident." (Emphasis added.) Paragraph 2(a) under "Conditions, Section 2" provides that the "*limit of liability*" for each person (as shown on the declarations page) "is the *maximum amount* we will pay for *all damages* arising out of bodily injury to any one person in any one accident." (Emphases added.) Paragraph 2(a) continues: "The figure listed [on the declarations page] is the *most we will pay* for any one person in any one accident." (Emphasis added.)

¶ 10    Section 3 of the policy is titled "Medical Payments, Coverage C." It provides that "we will pay for reasonable medical expenses incurred by an insured within two years from the date of the accident and as a result of bodily injury caused by the accident."

¶ 11    Next, the policy provides for certain reductions from the UIM coverage limits. Subsection (a) under "Uninsured-Underinsured Motorists, Coverage U" provides that the "limits of liability for [UIM] coverage will be reduced by the total payments of all bodily liability insurance policies applicable to the person or persons legally responsible for such damages." Subsection (e) under "Conditions, Section 2" provides that the "[a]mounts payable for *damages* under [UIM] coverage will be reduced by all sums paid under [MP]." (Emphasis added.)

¶ 12    Under the amendatory endorsement to "Conditions, Section 2," the policy provides that "the *most [Country] will pay*" to any one person under its UIM coverage is the *lesser of* (1) the difference between the each person *limit of recovery as shown on the declarations page* and the amount paid by or on behalf of the tortfeasor or (2) the difference between the amount of the insured's damages and the amount paid to the insured by or on behalf of the tortfeasor. (Emphasis added.)

¶ 13                              B. The Declaratory Judgment Action

¶ 14    Plaintiffs filed a five-count first amended complaint for declaratory judgment. Only counts I through III are at issue in this appeal. The gist of those counts was twofold: (1) Country improperly set off the MP benefits that it paid to Moruzzi against the $250,000 UIM limit rather than Moruzzi's total damages, and (2) Country owed Kaiser reasonable attorney fees as a result of its $100,000 MP setoff and the setoff for the $100,000 Farmers payment. Specifically, count I alleged that Country could not set off against the UIM limit the MP benefits that it paid to Moruzzi, but instead had to set them off against Moruzzi's total damages.[2] Count II alleged, in the alternative to count I, that Country could set off against the UIM limit the MP benefits that it paid only because Kaiser created a common fund: the Farmers settlement. Therefore, Kaiser alleged, it is entitled to reasonable attorney fees from the MP benefits. Count III alleged that Kaiser is also entitled to reasonable fees from the $100,000 Farmers payment under the common-fund doctrine. The parties filed cross-motions for summary judgment. The court granted Country's motions and denied plaintiffs' motions. Plaintiffs filed a timely appeal.

¶ 15                                    II. ANALYSIS

¶ 16                         A. The Setoff for Country's MP Benefits

_____

[2] Technically, this count pertains only to Moruzzi as the policyholder.

¶ 17    Plaintiffs first argue that the policy allows Country to set off the MP benefits that it paid to Moruzzi only against Moruzzi's total damages. This means that the $100,000 MP benefits that Country paid would be set off against $350,000 instead of $250,000. Then, when the Farmers payment of $100,000 is also set off, Moruzzi would be left with UIM coverage of $150,000 instead of the $50,000 that Country tendered. Second, plaintiffs argue in the alternative that the policy language is ambiguous and must be resolved in their favor. Third, plaintiffs argue, again in the alternative, that Country is not entitled to any setoff for the MP benefits that it paid. Plaintiffs contend that such setoffs apply only where necessary to prevent a double recovery. There can be no double recovery here, they say, because Moruzzi's total damages exceed the combined total of her UIM and MP coverage.

¶ 18    As noted, this matter was presented to the trial court on cross-motions for summary judgment. On June 1, 2017, the court granted Country's motion and denied plaintiffs' motion. Summary judgment is appropriate only where the pleadings, depositions, and admissions on file, together with affidavits, if any, demonstrate that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2016); *Standard Mutual Insurance Co. v. Lay*, 2013 IL 114617, ¶ 15. We review *de novo* a grant of summary judgment. *Lay*, 2013 IL 114617, ¶ 15.

¶ 19    Our analysis is also guided by the well-established principles relating to the interpretation of insurance policies. An insurance policy is a contract governed by the general rules of contract interpretation. *Cherry v. Elephant Insurance Co.*, 2018 IL App (5th) 170072, ¶ 11. A policyholder is bound by the policy's terms so long as those terms do not violate public policy. *Zdeb v. Allstate Insurance Co.*, 404 Ill. App. 3d 113, 124 (2010). The terms of an insurance policy must be given their plain and ordinary meaning, and courts should not search for ambiguities where none exist.

*Allstate Insurance Co. v. Smiley*, 276 Ill. App. 3d 971, 977 (1995). All provisions of an insurance policy must be read together to aid interpretation and to determine whether an ambiguity exists. *Smiley*, 276 Ill. App. 3d at 977. If the terms of a policy are clear and unambiguous, there is no need for construction, and the policy provisions will be applied as written. *Smiley*, 276 Ill. App. 3d at 977. However, if a provision is subject to more than one interpretation, it is ambiguous and should be construed against the insurer and in favor of the insured. *Cherry*, 2018 IL App (5th) 170072, ¶ 12. Reasonableness is the key, and the touchstone is whether a policy provision is subject to more than one reasonable interpretation, not whether "creative possibilities can be suggested." *Cherry*, 2018 IL App (5th) 170072, ¶ 13.

¶ 20     The purpose of UIM coverage is to "furnish protection for the difference between the insured's claim and the amounts available from the underinsured driver." *Martin v. Illinois Farmers Insurance*, 318 Ill. App. 3d 751, 758 (2000). However, UIM coverage is not intended to permit the insured to recover amounts from the insurer that exceed the coverage provided by the UIM policy. Pursuant to statute, the maximum amount payable under a UIM settlement agreement shall not exceed the amount by which the limits of the UIM coverage exceed the limits of the bodily injury liability insurance of the owner or operator of the underinsured vehicle. 215 ILCS 5/143a-2(7) (West 2018). Thus, in the instant case, Country was allowed a credit for Farmers' $100,000 payment. Plaintiffs also agree that public policy allows an insurer to reduce its UIM coverage by the amount of the MP benefits that it paid. See *Zdeb*, 404 Ill. App. 3d at 119 (insurance policy's setoff provision for reduction of UIM coverage by the amount of the MP benefits was consistent with public policy).

¶ 21     We first reject plaintiffs' contention that Country is not entitled to a setoff unless Moruzzi will receive a double recovery. Plaintiffs cite *Glidden v. Farmers Automobile Insurance Ass'n*, 57

Ill. 2d 330 (1974). *Glidden* involved a setoff against *uninsured* motorist coverage and is inapposite. See *Becker v. Country Mutual Insurance Co.*, 158 Ill. App. 3d 63, 70 (1987) (*Glidden* inapplicable to *UIM* coverage situation); *Adolphson v. Country Mutual Insurance Co.*, 187 Ill. App. 3d 718, 722 (1989) (*Glidden*'s considerations pertinent to *uninsured* motorists do not obtain for *UIM* motorist coverage).

¶ 22    Next, we address plaintiffs' argument that Country's MP benefits must be set off against Moruzzi's total damages rather than the UIM limits of liability. Plaintiffs rely on *McKinney v. American Standard Insurance Co. of Wisconsin*, 296 Ill. App. 3d 97 (1998). In *McKinney*, an underinsured driver ran a stop sign, killing the plaintiff's wife and unborn child. *McKinney*, 296 Ill. App. 3d at 98. The tortfeasor's insurance company paid its policy limit of $300,000, and the plaintiff then looked to his own policy for UIM coverage. *McKinney*, 296 Ill. App. 3d at 98. The plaintiff's UIM limit was $50,000. *McKinney*, 296 Ill. App. 3d at 98. American Standard denied that the tortfeasor was underinsured, because the amount that the plaintiff recovered from the tortfeasor exceeded his own policy limit. *McKinney*, 296 Ill. App. 3d at 99. The plaintiff sued, contending that he was entitled to recover the difference between the amount paid by the tortfeasor and the plaintiff's total damages up to the full policy limit. *McKinney*, 296 Ill. App. 3d at 98-99.

¶ 23    The plaintiff argued that his UIM coverage equaled his total damages based on his policy's language. American Standard's UIM coverage endorsement provided that the insurer would pay " 'compensatory damages for bodily injury which an insured person is legally entitled to recover from the owner or operator of an underinsured motor vehicle.' " *McKinney*, 296 Ill. App. 3d at 98. The policy defined an "underinsured motor vehicle" as a motor vehicle with insurance liability limits " 'less than the damages an insured person is legally entitled to recover.' " *McKinney*, 296 Ill. App. 3d at 98. The policy also provided that " '[a]ny amounts payable' " would be reduced by

a payment made on behalf of the tortfeasor. *McKinney*, 296 Ill. App. 3d at 98. The plaintiff argued that " 'any amounts payable' " referred to the total amount of damages legally due the plaintiff. *McKinney*, 296 Ill. App. 3d at 99-100. The trial court granted the insurer's motion for summary judgment, and the plaintiff appealed. *McKinney*, 296 Ill. App. 3d at 99.

¶ 24    The appellate court noted that the policy would pay "all compensable damages." *McKinney*, 296 Ill. App. 3d at 100. The court opined that a reasonable person in the insured's position could expect "amounts payable" to equal the total damages incurred. *McKinney*, 296 Ill. App. 3d at 100-101. The court, therefore, held " 'amounts payable' " to be ambiguous and gave it the construction most favorable to the plaintiff. *McKinney*, 296 Ill. App. 3d at 101.

¶ 25    Here, plaintiffs concede that the precise policy language in *McKinney* differs from the policy language here. For instance, in *McKinney*, the policy defined "underinsured motor vehicle" as one that is insured for less than the "damages an insured person is legally entitled to recover." *McKinney*, 296 Ill. App. 3d at 98. The reduction clause in the *McKinney* policy then provided that " '[a]ny amounts payable' " will be reduced by a payment made by or on behalf of the tortious driver. *McKinney*, 296 Ill. App. 3d at 98. According to plaintiffs, any variance in language between the policy in *McKinney* and the Country policy is a distinction without a difference, because the Country policy's MP reduction clause provides that "amounts payable for damages" will be reduced by the MP benefits that Country paid. Thus, plaintiffs argue, both policies reduce payments from damages.

¶ 26    Plaintiffs also urge that, where different terms are used in a policy, different meanings are intended. See, *e.g.*, *Lapham-Hickey Steel Corp. v. Protection Mutual Insurance Co.*, 166 Ill. 2d 520, 532 (1995) (to give all the words in an insurance policy effect, the words "suit" and "claim" used within the same provision must have different meanings). Thus, plaintiffs conclude that, by

providing that the MP benefits are set off from "damages," Country intended that the MP benefits be set off from an insured's total damages. Otherwise, plaintiffs argue, Country would have said that the MP benefits are to be set off from the "limits of liability."

¶ 27     When we consider the entire Country policy, as we must, we conclude that the MP reduction clause is ambiguous. The policy does not define "damages." When an insurance policy does not define a term, we give it its plain, ordinary, and popular meaning. *Valley Forge Insurance Co. v. Swiderski Electronics, Inc.*, 223 Ill. 2d 352, 366 (2006). Ordinarily, "damages" connotes money one must expend to remedy an injury for which he or she is responsible. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 116 (1992). Consequently, "damages" in Country's MP reduction clause can be read to mean Moruzzi's total losses caused by Townsend. However, other provisions of the Country policy make "damages" subject to the limits of liability. The definition of underinsured motor vehicle refers to the limits of liability rather than to damages. In section "2(a) Limits of Liability," Country states that the limit of liability is the maximum that Country will pay for "all damages." Further, the endorsement provides that Country will pay damages only if they are less than the difference between the limit of recovery as shown on the declarations page and the amount paid by or on behalf of the tortfeasor. Thus, there is a conflict between the MP reductions clause and other UIM provisions. Conflicting provisions in an insurance policy create an ambiguity. *Hanson v. Lumley Trucking, LLC*, 403 Ill. App. 3d 445, 448 (2010). An ambiguity must be resolved in favor of the insured. *United Services Automobile Ass'n v. Dare*, 357 Ill. App. 3d 955, 963-64 (2005). Consequently, we hold that the MP benefits are deductible from Moruzzi's damages. Accordingly, we reverse the trial court's grant of summary judgment in Country's favor and enter summary judgment on this issue in favor of plaintiffs.

¶ 28                              B. The Common-Fund Doctrine

¶ 29    Kaiser argues that it is entitled to attorney fees and a *pro rata* share of its expenses from both the MP benefits and the Farmers settlement pursuant to the common-fund doctrine. Kaiser contends that it created those "funds," saving Country $200,000.

¶ 30    The "common fund doctrine" provides that a litigant or a lawyer who recovers a common fund for the benefit of persons other than him or herself or a client is entitled to reasonable attorney fees from the fund. *Wendling v. Southern Illinois Hospital Services*, 242 Ill. 2d 261, 265 (2011). The doctrine is an exception to the general rule that, absent a statutory provision or an agreement between the parties, each party to litigation bears his or her own fees. *Wendling*, 242 Ill. 2d at 265. Underlying the doctrine is the equitable concept that the beneficiaries of the fund will be unjustly enriched by the lawyer's services unless those beneficiaries contribute to the costs of the litigation. *Wendling*, 242 Ill. 2d at 265. Put another way, an attorney who creates a fund in a personal injury case should in equity and good conscience be entitled to compensation for services rendered. *Wajnberg v. Wunglueck*, 2011 IL App (2d) 110190, ¶ 17.

¶ 31    To be entitled to fees under the doctrine, the attorney generally must show that (1) the fund was created as a result of the attorney's services, (2) the insurance company did not participate in the creation of the fund, and (3) the insurance company benefited or will benefit from the fund's creation. *Wajnberg*, 2011 IL App (2d) 110190, ¶ 18. Whether the doctrine applies is a question of law, which we review *de novo*. *Wajnberg*, 2011 IL App (2d) 110190, ¶ 16. In this case, the court granted Country summary judgment on this issue. As noted, our review is *de novo* of a grant of summary judgment. *Lay*, 2013 IL 114617, ¶ 15.

¶ 32    The parties dispute whether the savings to Country resulted from Country's contractual right under the policy or are "funds" created by Kaiser. Kaiser argues that, assuming Country has

a contractual right to offset its payment of MP benefits and the Farmers settlement, Country could exercise that right only because Kaiser pursued Moruzzi's claim against Townsend.

¶ 33    We hold that the common-fund doctrine does not apply. Our supreme court adopted the common-fund doctrine in *Baier v. State Farm Insurance Co.*, 66 Ill. 2d 119 (1977). In *Baier*, the plaintiff, who was an attorney, obtained on behalf of his client a $12,000 personal injury settlement from Allstate, which insured the tortious driver. *Baier*, 66 Ill. 2d at 122-23. State Farm, the client's insurer, was subrogated to those settlement proceeds in the sum of $1000. *Baier*, 66 Ill. 2d at 122. Although the plaintiff had no contract or agreement with State Farm, he demanded that State Farm pay him a fee for the services that he performed in recovering State Farm's subrogation lien. *Baier*, 66 Ill. 2d at 123. State Farm refused, and the circuit court granted State Farm summary judgment on procedural grounds. *Baier*, 66 Ill. 2d at 123. The appellate court held that summary judgment was inappropriate, and our supreme court agreed. *Baier*, 66 Ill. 2d at 123-24. Our supreme court adopted the common-fund doctrine, describing a "common fund" as a fund created by an attorney in which a "subrogee," who had done nothing to create the fund, seeks to benefit therefrom. *Baier*, 66 Ill. 2d at 124.

¶ 34    Subrogation is key, because the subrogee derives a direct benefit from the fund, in which it has a legal interest. "The obligation of the subrogated insurer to share in the costs of recovery from a third party wrongdoer arises because the insurer occupies the position of the insured with coextensive rights and liabilities and no creditor-debtor relationship [exists] between them." (Internal quotation marks omitted.) *Maynard v. Parker*, 54 Ill. App. 3d 141, 144 (1977). In *Ritter v. Hachmeister*, 356 Ill. App. 3d 926, 930 (2005), this court explained the issue as whether an insurer "claiming some right to part of the judgment [against the tortfeasor] must pay a share of the injured party's attorney fees." In sum, the subrogee is reimbursed from the proceeds that are

paid by or on behalf of the tortious driver. Hence, the subrogee benefits directly from the fund. Hence, in fairness, the subrogee ought to pay its share of the legal expenses incurred in generating the fund.

¶ 35    In contrast, in our case, Country was never subrogated to Moruzzi's rights in the Farmers settlement, but instead it deducted its MP payments from its own liability. Country, thus, had no legal right to the proceeds of the tort recovery. Nevertheless, Kaiser argues that Country owes it fees because Country benefited from the law firm's work. "But for" the Farmers settlement, Kaiser argues, Country could not have set off its MP payments or deducted the Farmers settlement from its UIM liability. Thus, Kaiser asserts, *any incidental benefit* to an insurer invokes the common-fund doctrine.

¶ 36    In support of its incidental-benefit theory, Kaiser relies on the Fourth District's decision in *Stevens v. Country Mutual Insurance Co.*, 387 Ill. App. 3d 796 (2008). In *Stevens*, the plaintiff, who was insured by Country Mutual, was injured in an automobile accident with another driver. *Stevens*, 387 Ill. App. 3d at 797. Country Mutual paid the plaintiff approximately $20,000 in MP. *Stevens*, 387 Ill. App. 3d at 798. According to Country Mutual's policy, Country Mutual was subrogated to the plaintiff's rights in the proceeds of any tort recovery. *Stevens*, 387 Ill. App. 3d at 798. The policy further required the plaintiff to hold those proceeds in trust and reimburse Country Mutual from those proceeds to the extent of Country Mutual's payment. *Stevens*, 387 Ill. App. 3d at 798. The plaintiff settled with the tortious driver for $50,000, which represented the tortious driver's maximum liability coverage. *Stevens*, 387 Ill. App. 3d at 798. The plaintiff then made a claim for $50,000 under his UIM coverage and requested that Country Mutual waive its subrogation lien for MP. *Stevens*, 387 Ill. App. 3d at 798. Country Mutual declined to waive its lien. *Stevens*, 387 Ill. App. 3d at 798. However, Country Mutual issued the plaintiff a draft in the

amount of $29,579.40 in payment of the plaintiff's UIM claim. *Stevens*, 387 Ill. App. 3d at 798. Country Mutual arrived at that figure by deducting the $50,000 paid by the tortious driver from the UIM policy limit of $100,000, and then it further deducted the $20,420.60 that it paid in MP benefits. *Stevens*, 387 Ill. App. 3d at 798-99. Thus, Country Mutual set off its MP—which it was entitled to do pursuant to the policy—rather than pursue its lien. The plaintiff filed suit to adjudicate Country Mutual's lien, arguing that Country Mutual was obligated to pay attorney fees out of the lien. *Stevens*, 387 Ill. App. 3d at 799. The trial court granted the plaintiff summary judgment. *Stevens*, 387 Ill. App. 3d at 799.

¶ 37     The appellate court held that the plaintiff's attorney, through his legal services, created a $50,000 common fund (the tortious driver's payment) and that Country Mutual did not participate in the creation of that fund. *Stevens*, 387 Ill. App. 3d at 801. Then, the court held that Country Mutual benefited from the creation of the common fund in three ways: (1) "but for" the plaintiff's attorney's actions, Country Mutual would have expended administrative and legal resources to recover the MP benefits that it paid to the plaintiff; (2) under the terms of the policy, the plaintiff was obligated to hold the proceeds of the common fund in trust and to use the trust to reimburse Country Mutual to the extent of its MP; and (3) Country Mutual could limit its UIM liability by deducting the $50,000 common fund from the plaintiff's UIM claim. *Stevens*, 387 Ill. App. 3d at 801-02.

¶ 38     Country Mutual argued that the common-fund doctrine did not apply, because the MP benefits were reimbursed from Country Mutual's UIM liability rather than from the proceeds of the tort settlement. *Stevens*, 387 Ill. App. 3d at 802. The appellate court declined to address the argument because it had already determined that Country Mutual benefited from the common fund created solely by the plaintiff's attorney and that policy language allowing Country Mutual to

recover its MP through its UIM coverage "does not negate its obligation to pay [the plaintiff's attorney] for his services in creating the common fund." *Stevens*, 387 Ill. App. 3d at 803. The Fourth District in *Waterhouse v. Robinson*, 2017 IL App (4th) 160433, ¶ 19, followed *Stevens* and applied the common-fund doctrine where State Farm, which provided the plaintiff UIM coverage, waived its subrogation lien for MP.

¶ 39　　In our view, *Stevens* expanded the common-fund doctrine beyond *Baier* to apply it where an insurance company is only incidentally, rather than directly, benefited. In other words, *Stevens* applied the common fund-doctrine even though Country Mutual was not reimbursed from the common fund. The court reached this result despite its recognition that the common-fund doctrine applies to persons or entities that have "an ownership interest" in the common fund and, therefore, are liable for litigation expenses incurred in creating, preserving, or increasing the value of the fund. (Internal quotation marks omitted.) See *Stevens*, 387 Ill. App. 3d at 801.

¶ 40　　Kaiser further relies on two unpublished decisions, *Tuggle, Schiro & Lichtenberger, P.C. v. Country Preferred Insurance Co.*, 2015 IL App (4th) 141036-U, and *Scheppler v. Pyle*, 2013 IL App (3d) 110380-U. Country moves to strike Kaiser's arguments based on those cases on the ground that unpublished orders are not precedential. See *In re Marriage of Schmitt*, 391 Ill. App. 3d 1010, 1017 (2009) (unpublished orders are not precedential and may not be cited except to support contentions of double jeopardy, *res judicata*, collateral estoppel, or law of the case). Kaiser asserts that collateral estoppel applies. An unpublished decision can be cited for collateral estoppel purposes when a party seeks to use matter from the unpublished decision to establish certain facts or issues in the present case, provided that the elements of collateral estoppel are otherwise met. *In re Liquidation of Lumbermens Mutual Casualty Co.*, 2018 IL App (1st) 171613, ¶ 18. The elements of collateral estoppel are that (1) the issue decided in the prior litigation is identical to

the one presented in the current case, (2) there was a final adjudication on the merits in the prior case, and (3) the party against whom estoppel was asserted was a party, or was in privity with a party, to the prior litigation. *Pine Top Receivables of Illinois, LLC v. Transfercom, Ltd.*, 2017 IL App (1st) 161781, ¶ 8. Kaiser maintains that each element is satisfied here, because (1) the issues in the prior cases were identical to the present issue, namely, whether the common-fund doctrine applied, (2) there was a final adjudication on the merits in the prior cases, and (3) Country, or an entity with which it is in privity, was a party to the prior litigation. Kaiser concludes that, because Country "lost [the common fund] issue in the [prior] Rule 23 Orders before," Country is "estopped to relitigate the common fund" issue in the present case. Kaiser's argument casts too wide a net, as it assumes that every case involving a common fund determination rests on the same facts and issues. Clearly, that is not the case. Accordingly, collateral estoppel does not apply, and we grant Country's motion to strike Kaiser's arguments based on the unpublished orders.

¶ 41 We respectfully disagree with the decisions in *Stevens* and *Waterhouse*, and we decline to follow them. In *Wendling*, 242 Ill. 2d at 265, our supreme court noted that courts have applied the common-fund doctrine in numerous types of civil cases, including "insurance subrogation claims." The high court did not say "insurance claims." The subrogation requirement comports with the purpose of the doctrine, which "permits a party who creates, preserves, or increases the value of a fund *in which others have an ownership interest* to be reimbursed from that fund for litigation expenses incurred, including counsel fees." (Emphasis added.) *Morris B. Chapman & Associates, Ltd. v. Kitzman*, 193 Ill. 2d 560, 572-73 (2000); *Wajnberg*, 2011 IL App (2d) 110190, ¶ 17.

¶ 42 Further, in our view, the absence of the subrogation component alters the relationship between the insurer and its insured from one in which the insurer occupies the position of the insured to a kind of creditor-debtor relationship, which cannot form the basis for application of the

common-fund doctrine. See *Wendling*, 242 Ill. 2d at 265 ("Illinois courts have never applied the common-fund doctrine to a creditor-debtor relationship \*\*\*."). In the absence of subrogation, the insurance company, as happened in the present case and in *Stevens*, sets off the amount that it paid its insured in MP benefits from what it owes its insured in UIM coverage. This setoff is based on the insured's contractual obligation to repay the insurer the amounts the insurer advanced in MP benefits. "The concept of setoff allows [parties] that owe each other money to apply their mutual debts against each other \*\*\*." (Internal quotation marks omitted.) *Shapero v. Mercede*, 823 A.2d 1263, 1270-71 (Conn. App. Ct. 2003). In practical terms, Moruzzi and Country owed each other money. Thus, the relationship was as mutual debtors.

¶ 43     The court in *Stevens* ignored this impediment to the application of the common-fund doctrine by simply refusing to consider a similar argument. See *Stevens*, 387 Ill. App. 3d at 802-03 ("[W]e need not address Country's contention [that the MP benefits were reimbursed from its UIM coverage] because \*\*\* the common-fund doctrine does not depend upon the insurance-policy language \*\*\*."). The obligation to pay fees under the common-fund doctrine is independent of any insurance contract (*Wajnberg*, 2011 IL App (2d) 110190, ¶ 26), only if the common-fund doctrine applies. Put another way, courts do not decide whether the common-fund doctrine applies by brushing off the facts of the case.

¶ 44     In his dissent in *Stevens*, Justice Appleton succinctly grasped the reason that a setoff scenario cannot trigger the common-fund doctrine: "[T]he recoupment of the medical payments advanced by [Country] came from the reduction of its liability under the [UIM] coverage, not by way of reimbursement from any funds generated by plaintiff's counsel's efforts." *Stevens*, 387 Ill. App. 3d at 805 (Appleton, J., dissenting).

¶ 45    We believe that the Fifth District, in *Johnson v. State Farm Mutual Automobile Insurance Co.*, 323 Ill. App. 3d 376 (2001), correctly analyzed the common-fund doctrine's inapplicability in a setoff scenario. In *Johnson*, the plaintiff was injured by an uninsured motorist, and her insurer, State Farm, paid her medical expenses. *Johnson*, 323 Ill. App. 3d at 378. Subsequently, the plaintiff and State Farm arbitrated her uninsured motorist claim, and the arbitrators awarded the plaintiff $22,000. *Johnson*, 323 Ill. App. 3d at 378. State Farm deducted the amount of its MP payments and tendered the plaintiff a check for $17,000. *Johnson*, 323 Ill. App. 3d at 378. Plaintiff's counsel asserted that the arbitration award was a common fund that he established, requiring State Farm to pay him fees (the opinion does not specify whether the fees were to be paid from the MP benefits or from the arbitration award). *Johnson*, 323 Ill. App. 3d at 378. The trial court found that the attorney created a common fund, and, on appeal, State Farm argued that it did not benefit from the arbitration award. *Johnson*, 323 Ill. App. 3d at 382. The appellate court agreed with State Farm, holding that the insurance policy authorized State Farm to set off the MP and that the plaintiff's attorney did not create any fund out of which State Farm was reimbursed. *Johnson*, 323 Ill. App. 3d at 383.

¶ 46    For the above reasons, we hold that Kaiser did not create a common fund, or common funds, and that Country, therefore, is not liable to Kaiser for attorney fees. Accordingly, we affirm the trial court's grant of summary judgment in Country's favor on this issue.

¶ 47                              III. CONCLUSION

¶ 48    For the reasons stated, we affirm the judgment of the circuit court of Du Page County in part and reverse it in part.

¶ 49    Affirmed in part and reversed in part.

¶ 50    Cause remanded.

**No. 2-19-0411**

| | |
|---|---|
| **Cite as:** | *Moruzzi v. CC Services, Inc.*, 2020 IL App (2d) 190411 |
| **Decision Under Review:** | Appeal from the Circuit Court of Du Page County, No. 15-MR-1639; the Hon. Bonnie M. Wheaton, Judge, presiding. |
| **Attorneys for Appellants:** | Joseph P. Postel, of Lindsay, Pickett & Postel, LLC, of Chicago, for appellants. |
| **Attorneys for Appellee:** | Keith G. Carlson and Jeffery A. Bier, of Carlson Law Offices, of Chicago, for appellee. |